GREGORY v. BAER et al.

No. 5359.

Circuit Court of Appeals, Fourth Circuit.

May 11, 1945.

412

Before PARKER, SOPER and DOBIE, Circuit Judges.

W. R. Ashburn, of Norfolk, Va. (R. Clarence Dozier, of Elizabeth City, N. C., on the brief), for appellant.

P. W. McMullan, of Elizabeth City, N. C., for appellees.

SOPER, Circuit Judge.

This is an appeal from a judgment for the defendants for breach of two contracts by the plaintiff. The controversy arose in a suit by the plaintiff to recover from the defendants for lumber sold to them, and for inspection fees advanced by him under the contracts. The plaintiff is a manufacturer of lumber with a saw mill in North Carolina; the defendants are dealers in hardwoods in Baltimore, who manufacture one-half the lumber they sell and buy the remainder in the open market, preferably under logging contracts. The defendants counterclaimed for failure of the plaintiff to deliver all the lumber called for by the contracts. The referee found that the defendants owed the plaintiff $2,352.39 for lumber delivered and $760 for inspection fees, with interest on both amounts, and also that the plaintiff had broken the contracts by insufficient deliveries, but that his breaches had been waived by the defendants. The District Judge affirmed the referee's first conclusion but reversed the second, and finding no waiver by the defendants, rendered a judgment in their favor for $10,700 with interest less the amount of the defendant's indebtedness to the plaintiff. No question is raised on this appeal in regard to the indebtedness due and owing by the defendants to the plaintiff. The controversy is confined to the breaches of the contracts by the plaintiff and to the contention that these breaches were waived by the defendants.

On October 4, 1935 the plaintiff entered into a contract with the owners of 400 acres of land known as the Skinner and Toxey tract, for the sale and logging of the growing timber thereon. The contract contained no express limitation on the time when the timber should be cut from this tract. On January 31, 1936 the plaintiff, acting through an agent, sold certain kinds of the timber to be cut from this tract to the defendants at certain prices. The aggregate estimated quantities thereof contemplated to be cut were stated to be from approximately 3,400,000 to approximately 4,500,000 feet. It was agreed that the title to the lumber when manufactured should pass to the defendants, subject to the plaintiff's equity therein, and that it should be piled in a yard to be leased to the defendants who agreed to advance to the plaintiff $10 per thousand feet for the timber when it had been graded and inspected. Very little timber was cut under this contract because the plaintiff's sawmill burned down in 1936.

On January 14, 1937 a new contract between the parties was entered into for the same timber on similar terms with revised prices, wherein the same estimated quantities were set out and it was stated that the plaintiff was "not bound to deliver more than all the timber produced" by him from the tract. Pursuant to this contract the plaintiff began operations in August, 1937 and delivered to the defendants all the lumber he cut from the tract, amounting to 2,217,839 feet. He ceased operations on August 31, 1938.

He was compelled to desist by reason of injunctions obtained by landowners who established title to some of the lands comprised within the outlines of the tract. He notified the defendants of the situation but said he would continue to cut the timber on the tract as soon as he could re-enter, and would notify defendants when the litigation ended. All of the injunctions, with the exception of one relating to one small tract, were dissolved prior to November 1, 1940. But the defendants had no knowledge of this fact, as the judge found, since

the plaintiff at various times between August 31, 1938 and November 1, 1940 told the defendants that the injunctions were still in effect and that he could not re-enter.

On June 27, 1939 the parties entered into another contract for the sale of all of certain kinds of lumber to be cut from a tract in North Carolina known as the Mitchell tract which was purchased by the plaintiff for $6,000 of which the defendants advanced $4,000. The quantities to be cut were estimated to be not less than 650,000 feet nor more than 1,000,000 feet of lumber. Provisions similar to those in the other contracts with reference to the manufacture of the lumber, the passage of the title and cash advances were inserted. The prices were specified and the defendants agreed to start immediately to manufacture the lumber and to continue as speedily as the weather would permit and to complete the manufacture within twelve months. In September, 1940 the plaintiff notified the defendants that he had sawn all the timber off the land and was going to sell it for pasture. At that time he had delivered 444,785 feet of lumber under the contract and there remained 245,000 feet of merchantable timber still uncut.

On November 1, 1940 during unsuccessful negotiations for a contract covering timber on a third tract, the plaintiff advised the defendants that he would saw no more lumber for them under any contract, and since that date, the plaintiff has refused to saw any lumber of any kind for the defendant. The conclusion on this state of facts reached by the District Judge is contained in the following finding of the court: "That on or about November 1, 1940 the plaintiff breached his contract with the defendants, both with respect to the Skinner and Toxey tract and the Mitchell tract. That, at said time, and consistently thereafter, the plaintiff advised the defendants that he was through sawing any lumber for them, that he was absolutely finished and would saw no more lumber for defendants under any contract, and that he was not going to deliver another stick of timber to the defendants. That the plaintiff did not thereafter saw any timber or lumber for the defendants. That the difference at said time between the contract price and the market price of lumber of the kind and quality contemplated by said two contracts, at the place of contemplated delivery, was an average of $10 per M. feet —the market price being this average amount higher than the contract price."

The court also found that there remained uncut and available to the plaintiff 825,000 feet of standing timber on the Skinner and Toxey tract and 245,000 feet on the Mitchell tract and that through the failure of the plaintiff to cut and deliver these amounts the defendants had suffered a loss of $10,700.

■ We consider first the objections raised by the plaintiff to the finding that he was short in his deliveries under both contracts. He contends that he was not obligated by his contract on the Skinner and Toxey tract to deliver more than the amount of timber, to wit, 2,217,839 feet, which he actually cut and delivered, although 825,000 feet remained uncut, because the contract provided that he was not bound to deliver more than all the lumber produced by him from the tract. In short, he contends that he was at liberty to discontinue the manufacture and delivery of lumber from the tract at any time no matter how small the amount already cut and delivered had been. We think that this interpretation of the contract is not reasonable. It was expressly stated in the document that it contemplated approximately from 3,400,000 to 4,500,000 feet of lumber and it is obvious from the surrounding circumstances that the amount of timber to be sawn and delivered was of material importance not only to the sawmill man, who was obliged to set up his equipment on the tract and to employ laborers at the work, but also to the defendant lumber dealer who needed substantial quantities for its business. The qualification which limited the plaintiff's obligation to deliver to the amount produced by him was obviously inserted to protect him against an overestimate of the quantity of timber on the land. This is not only a reasonable interpretation of the contract when all parts of it are taken into consideration, but it is supported by the testimony of the plaintiff who stated that the qualification was placed in the contract because he did not know how much timber the tract contained.

■ The plaintiff's interpretation of the Mitchell contract is also at fault. He contends that he was obligated to deliver 650,000 feet of lumber but no more, while the defendants were obligated to take as much as one million feet if he should cut that quantity of timber from the land. He admits that he delivered only 444,785 feet and that 245,000 feet of merchantable timber remained standing, but he says that the

shortage with which he is chargeable is only 205,215 feet—that is, the difference between the minimum stated in the contract and the amount delivered, and that he is not chargeable with the total quantity of uncut timber on the tract. This position overlooks the express words of the first paragraph of the contract wherein the plaintiff sold to the defendant *all* of the timber to be sawn from the tract. The statement of minimum and maximum quantities set out in the second paragraph of the contract, construed most favorably to the plaintiff, may be considered as an estimate of the quantity of timber on the land, but it obviously did not relieve the plaintiff from the obligation to cut and deliver all the timber that could be found thereon.

The plaintiff also defends his failure to deliver the uncut timber on both tracts on the ground that he delivered similar timber from other sources to the defendants in quantities largely in excess of the shortages charged against him and at the same prices named in the contracts, although the market prices were substantially higher. He claims that this timber was accepted by the defendants in substitution for that due them under the contracts in suit. In support of this argument the plaintiff points out that there were no formal contracts for the outside lumber and that his total deliveries at the contract prices amounted to 5,260,421 feet although his contract obligations, as found by the court, amounted to only 3,732,624 feet. On the other hand, the evidence shows that it was to the advantage of the plaintiff, who had been enjoined from cutting on the Skinner and Toxey tract, to keep his equipment and organization at work and that he was assisted in obtaining other logging contracts and other logs from outside sources through the advancement of funds by the defendants. By this arrangement he was able to obtain material for manufacture of which he delivered only a part to the defendants while he sold the rest to advantage on the open market. It is also noteworthy that according to his own statement he delivered to defendants at less than the market price more lumber than he was obligated to furnish under his contracts. Both the referee and the district judge, after an examination of the evidence, found that the deliveries of lumber from other sources were not made by the plaintiff in substitution for the lumber he had contracted to sell under the contracts, which defendants believed to be in abeyance, but were covered by separate agreements between the parties. We find nothing in the case to justify a reversal of this conclusion.

We come then to the question of waiver, a defense raised by the plaintiff to the counterclaim which was sustained by the referee but rejected by the District Judge. It is based upon certain conduct and statements of the defendants in the latter part of 1940 and in 1941 after the plaintiff had broken his agreements and had stopped the delivery of the lumber from the two tracts of land. Shipments from the Skinner and Toxey tract ceased on August 31, 1938 and from the Mitchell tract in March, 1940. In November, 1940 the parties conferred with reference to a proposed new contract for timber on another tract of land. During the negotiations the defendants stated, as the judge found, that the performance of the former contracts had been completely satisfactory to them. The new contract, however, was not made because the plaintiff was dissatisfied with the prices offered and it was then that he stated in forcible terms that he was absolutely finished and would not saw or deliver any more timber or lumber for defendants under any contract.

Subsequent to these negotiations letters and statements of account passed between the parties between June and October, 1941 in which defendants admitted an indebtedness of $2,352.39 for lumber delivered under the two contracts, and also an additional sum for inspection fees and offered to settle for these amounts. Settlement, however, was not made since plaintiff claimed a larger sum for inspection and the parties did not agree on the amount due therefor. The pending litigation ensued. The referee made the finding that the defendants had full knowledge during these transactions that plaintiff had broken the contracts and therefore drew the inference that defendants waived the plaintiff's breaches. The judge on the other hand expressly disapproved this finding since he was of opinion that it was not warranted by the referee's findings of fact, as modified by the court, or by the evidence in the case. The judge found that the statements of the defendants in 1941 were made in ignorance of material facts relating to their rights, in that they believed that all of the timber had been sawn and delivered from the Mitchell tract and that the cutting of the timber on the Skinner and Toxey tract had been enjoined by the courts. Judgment was there-

fore rendered for the defendants on the counterclaim less the amount due the plaintiff for lumber delivered and inspection fees paid.

Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that the findings of fact by the court in actions tried without a jury shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The force and effect of this rule is somewhat impaired in this case by the contrary findings as to the facts relating to waiver by the referee before whom the witnesses appeared; but we have examined the conflicting evidence on the point with this situation in mind, and have reached the conclusion that the weight of the testimony supports the finding of the judge that the defendants were not aware of the plaintiff's breaches of contract in 1940 and 1941 when they expressed satisfaction with the plaintiff's performance and acknowledged their indebtedness to him.

The term "waiver", as Williston points out, Contracts, § 679 et seq., is used in a number of different senses; and the applicable rules of law cannot be stated unless the sense in which the term is used and the situation to which it is applied are clearly understood. In the present case the term is applied to a situation where a definite breach of a substantial part of a contract by one of the contracting parties has occurred and it is inferred from the subsequent conduct and statements of the other party that his right to damages flowing from the breach has been voluntarily given up or waived. This relinquishment is not supported by circumstances which give rise to any estoppel, promissory or otherwise, so as to preclude the injured party from asserting his rights.

In this situation two elements are lacking either of which invalidates the defense, even if it be assumed that the defendants agreed to give up their right to recover for breach of contract. They had no knowledge of the plaintiff's breaches at the time, and their agreement was not supported by any consideration. Whatever may be the rule in other situations, there can be no doubt that when a promise to overlook a failure to perform a contract is made after the breach has occurred, the promise is of no legal effect unless the promisor has knowledge of the essential facts; Williston, Contracts, § 679; Restatement of Contracts, §§ 88, 93; and this rule is supported by the North Carolina decisions. See Danville Lumber & Mfg. Co. v. Gallivan Building Co., 177 N.C. 103, 97 S.E. 718; Brady v. Funeral Ben. Ass'n, 205 N.C. 5, 169 S.E. 823; Allen Bros. v. Raleigh Saving & Trust Co., 180 N.C 608, 105 S.E. 401.

In the instant case the lack of consideration is equally fatal. There are indeed situations in which a right may be effectively relinquished without consideration, for example, a promise to pay a debt barred by the statute of limitations, or to forego a technical defense to an action on an insurance policy. But this departure from the general rule of contracts is not permissible where the right to be given up relates to a substantial part of the contract and there is no estoppel. Such a promise has no more validity than any other parol promise without consideration. See Williston, Contracts, §§ 693, 694; Restatement of Contracts, § 88; 17 C.J.S., Contracts, § 492; 12 Am.Jur., Contracts, § 354; Cromartie v. Virginia-Carolina Lumber Co., 173 N.C. 712, 715, 91 S.E. 945; Atlantic Coast Line R. Co. v. Bryan, 109 Va. 523, 65 S.E. 30; Salley v. McCoy, 182 S.C. 249, 189 S.E. 196. The breach of contract alleged to have been waived in the present controversy went to the very heart of the transaction, and since there was no consideration, the waiver lacked legal validity.

The judgment of the District Court is affirmed.