## MUTUAL SAVINGS & LOAN ASSOCIATION et al. v. McCANTS.

### In re BROOME'S MEN'S SHOP.
#### No. 6086.

United States Court of Appeals Fourth Circuit.

Argued June 30, 1950.

Decided July 31, 1950.

---

3. Fed.R.Civ.P. 12(b), 28 U.S.C.A.

424

E. W. Mullins, Columbia, S. C. (Nelson, Mullins & Grier, Columbia, S. C., on brief), for appellants.

John E. Edens and Edward Mobley Woodward, Columbia, S. C., for appellee.

Before PARKER, Chief Judge, SOPER, Circuit Judge and GILLIAM, District Judge.

PARKER, Chief Judge.

This is an appeal in a controversy arising in the bankruptcy proceedings of Broome's Men's Shop, a corporation adjudged bankrupt upon an involuntary petition. The acts of bankruptcy consisted in the giving of two chattel mortgages upon the stock of goods of the corporation which were recorded within four months of the filing of the petition and at a time when the corporation was found to be insolvent. After the adjudication, the mortgagees filed petitions claiming liens by virtue of the mortgages and denying that the corporation was insolvent when they were recorded. The referee held that it was insolvent at that time and that the mortgagees were

not entitled to a lien by virtue of their mortgages but were entitled to prove the mortgage debts as unsecured claims against the estate. Upon review by the judge the referee's action was affirmed as to the finding of insolvency and the denial of a lien to the mortgagees and also as to allowing one of the mortgagees to prove an unsecured claim but was reversed as to the unsecured claim allowed the other mortgagee on the ground that this did not represent a valid indebtedness. Both mortgagees have appealed and two questions are presented for our consideration: (1) whether the court erred in finding that the corporation was insolvent at the time of the recording of the mortgages and (2) whether the note and mortgage denied proof as an unsecured debt was a valid indebtedness of the corporation.

■ On the first question, extended testimony was taken as to the financial condition of the corporation from the time of its organization; and both the referee and the judge reached the conclusion, which we think was amply supported, that it was insolvent not only on November 20, 1947, when the mortgages were recorded, but also for some time prior thereto. As said by the judge in his opinion reviewing the action of the referee: "The business venture, out of which this matter arose, was started, with inadequate capital, about the last day of January, 1947, and was insolvent before November 20 of that year, and likely was at the time of its incorporation which occurred on May 5, 1947."

On March 1, 1948, the corporation was so hopelessly insolvent that it turned over its business to the mortgagees whose mortgages had been taken in May of the preceding year but had been held off the record until November 20. At the time of the turnover, it owed debts of more than $35,000 and its assets did not exceed $22,500. There is nothing in the record to indicate that its condition was any better than this on the preceding November 20, when the mortgages were recorded. On the contrary, the business had in the meantime gone through the usually profitable Christmas season; and it is reasonable to assume that it was in better condition on March 1, 1948, than on the preceding November 20, since nothing that could have occasioned loss is shown to have occurred. Approximately $25,000 of the claims outstanding when the petition in bankruptcy was filed were owing on November 20, and the bank records show that within ten days after that date over $4700 was paid on debts which must have been owing at that time. In the face of testimony such as this and in the absence of anything to show solvency on the crucial date, we would not be justified in disturbing the concurrent findings of the judge and referee, arrived at after a careful sifting of all the evidence available bearing on the financial condition of the corporation from the time of its organization until the filing of the petition in bankruptcy.

■ It is true that the insolvency of the bankrupt for the purposes of this case must be determined as of the date when the mortgages were recorded and that, in making such determination, assets must be valued at what they were reasonably worth at that time, and not at what they turned out to be worth sometime later after bankruptcy had supervened. Everett v. Warfield Mining Co., 4 Cir., 37 F.2d 328. The insuperable difficulty that confronts appellants, however, is that both the referee and the trial judge have found insolvency at the time of the recording of the mortgages and the evidence amply supports the finding. Appellants complain because specific findings were not made by the court below as to the evidentiary facts upon which the finding of insolvency was based; but, the opinion of the judge sets out at length the financial history of the corporation which justifies the finding of insolvency on November 20, when taken in connection with its condition at the time it ceased doing business.

■ We think, however, that the learned judge was in error in denying the Perpetual Building and Loan Association the right to prove the note secured by its mortgage as an unsecured debt. A careful review of the evidence in the case shows that this note represents money unquestionably loaned the corporation at or about the time it was organized and used to pay

one Douglas Broome for his interest in the stock of goods which the corporation was acquiring. The facts established by the evidence are that the business of Broome's Men's Shop was commenced as a partnership in January 1947 by James T. Broome and Douglas Broome, the latter being a silent partner. The business was taken over on May 5, 1947, by the corporation which was organized for that purpose. The stock of goods belonging to the partnership was valued at $15,000, and it was agreed that in payment therefor a mortgage of $4,000 should be assumed, $5,200 should be credited upon J. T. Broome's stock subscription and $5,800 should be paid in cash to Douglas Broome for his interest in the partnership with funds which the corporation should borrow. A loan was obtained for the purpose of making this payment from the Perpetual Building and Loan Association and the note which it has filed as a claim was executed, secured by the mortgage on the corporate assets. The loan was secured also by the pledge of a note given by Douglas Broome for a subscription to stock and the taking of a note and mortgage on real estate executed by a Miss Brazell, another stockholder. If the uncontradicted evidence is believed, there can be no question but that the money was loaned by claimant to the corporation and was received by Douglas Broome for his interest in the partnership or that a valid indebtedness on the part of the corporation was thereby created, even though the mortgage on the corporate assets securing it must be held void as a preferential transfer.

■ We find nothing in the record to support the conclusion that the note was without consideration. Not only does the oral testimony show that it was executed to secure the money for the corporation to pay Douglas Broome for his interest in the partnership, but this is supported also by the records of the corporation, and cancelled checks introduced in evidence show that the proceeds of the loan came into his hands. The fact that his $7,500 note given in payment for stock, and indorsed by a solvent indorser, was pledged by the corporation as additional security for the loan does not in any way tend to disprove the validity of the debt, but rather tends to show that it was in truth the indebtedness of the corporation, as the witnesses had testified. Nor is validity negatived by the fact that the Building and Loan Association acquired as additional security the note and mortgage on real estate executed by Miss Brazell, since it was not allowed to lend except upon real estate security. The evidence shows that the corporation was the debtor primarily liable for the loan and that the note and mortgage of Miss Brazell were taken merely as additional security. If she is called upon to pay the debt, there is no reason why she should not be subrogated to the rights of the Building and Loan Association with respect to the claim here asserted.

■ Question has been raised as to the scope of our review where the finding of the District Judge reverses a finding by the referee. There seems to be some conflict of authority as to this. Cf. Phillips v. Baker, 5 Cir., 165 F.2d 578; Mergenthaler v. Dailey, 2 Cir., 136 F.2d 182, with Rait v. Federal Land Bank of St. Paul, 8 Cir., 135 F.2d 447; Gregory v. Baer, 4 Cir., 149 F.2d 411. We need not decide the question, since, whatever the scope of review to be applied, we think that the validity of the indebtedness in question has been established. We think that we should say, however, that it is the District Judge, not the referee, whose action is reviewed by this court. While we may not give to the finding of a District Judge reversing a finding by a referee as great weight as where the findings of the two are in accord (Gregory v. Baer, supra), we are not justified in ignoring the fact that the District Judge has passed on the matter. When he passes upon it, the finding which results is his, not that of the referee; and it is his finding, not the referee's, which we review, and we review it under no presumption that the referee, and not the judge, was the one who was right. Weight is to be accorded, of course, to the fact that the referee saw and heard the witnesses; but weight must also be given to the fact that it is in the judge that final judicial power in the Dis-

trict Court is vested, that he is ordinarily a man of sound judgment and wide experience and that action on his part reversing a referee is ordinarily taken only after careful consideration. To say that when he reverses the referee we must pass upon the latter's action just as though it had not been reversed and must sustain it unless clearly wrong without reference to what the judge has found, is to prescribe a rule of review which, in our opinion, does not accord due weight to the exercise of the judicial function by the District Judge. The correct rule, we think, is that we reverse the finding of the judge only if in our opinion it is clearly wrong and that, in making this decision, we should properly take into account, for what upon the record it may be worth, the fact that the referee, who had the advantage of seeing and hearing the witnesses, took a contrary view from the judge.

For the reasons stated, the order of the lower court will be modified so as to permit the filing of an unsecured claim by the Perpetual Building and Loan Association for the debt of $5,800 as allowed by the referee and as so modified the order appealed from will be affirmed. The costs on the appeal will be divided.

Modified and affirmed.