**MOUNTAIN TRUST BANK, Appellant,**

v.

**Raymond Arthur SHIFFLETT, Bankrupt, Appellee.**

**No. 7582.**

United States Court of Appeals Fourth Circuit.

Argued April 8, 1958.

Decided May 23, 1958.

J. Glenwood Strickler, Roanoke, Va., for appellant.

Ben M. Richardson, Roanoke, Va., for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

Objection to the discharge of the bankrupt was made on one of the grounds specified in Section 14, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c, to wit: that he had obtained a loan of money from the Mountain Trust Bank of Roanoke, Virginia, by making a materially false statement in writing respecting his financial condition. A hearing was had by the Referee at which witnesses for the bank and for the bankrupt appeared and testified. The Referee sustained the objection and ordered that the discharge be denied. Thereafter, on petition for review, the matter came before the District Judge for hearing on the written record and the judge being of the opinion that the evidence was insufficient to sustain the charge reversed the order of the Referee and granted the discharge. The case is before us on the appeal of the bank.

The Referee, who heard the witnesses, gave credit to the testimony of an official who was vice-president of the bank and manager of the branch which made the loan. He testified that on March 22,

1956, the bankrupt and his wife applied to the bank for a loan in the sum of $670.-32, and in answer to inquiries gave a written statement to the manager which purported to contain a complete list of his assets, comprising certain items of real and personal property in the amount of $41,000, and a complete list of his liabilities, which consisted only of mortgages on the real estate in the amount of $14,650 and a contingent liability as an endorser of $179.20. The written statement was prepared by the bank manager on a printed form in answer to specific questions and was signed by the bankrupt and his wife. The form listed under Liabilities items of notes payable to relatives and to others and accounts payable, but nothing was inserted opposite these items since the bankrupt told the manager, according to the latter's testimony, that the mortgage debts and the contingent liability were the only debts he owed.

Subsequently additional loans were made by the bank to the bankrupt on May 22, 1956, in the sum of $930.24 and on July 11, 1956, in the sum of $424.62. The manager testified that all of the loans were made in reliance upon the truth of the written statement.

On September 26, 1956, the bankrupt filed a voluntary petition in bankruptcy with a schedule of assets and liabilities which showed that he had no assets except certain personal property in the amount of $275.00, which he claimed to be exempt, and liabilities of $24,380.21 consisting of $15,493.88 in secured claims, $5,319.63 in unsecured claims including $1,500.00 due his father, and $3,-567.70 in accommodation paper. From these schedules it appeared that on March 22, 1956, the date of his first loan from the Mountain Trust Bank, he owed unsecured debts of approximately $4,000 including $1,500 due his father. In addition, the bankrupt was liable under accommodation paper, of which the amount outstanding on March 22, 1956 is not shown by the record, although the record shows that at the time of the petition in bankruptcy the amount of accommodation paper outstanding on which the bankrupt was liable amounted to $3,567.-70.

On or about August 8, 1956, shortly before the petition in bankruptcy was filed, the bankrupt and his wife conveyed all of the mortgaged real estate to his father in order to secure his father for an indebtedness in the amount of $3,000. The property was held by the bankrupt and his wife as tenants by the entireties.

At the hearing before the Referee the bankrupt testified that he did not recall signing the statement to the Mountain Trust Bank, although he identified his signature, and that he was not questioned as to any other debts than the mortgage debts on his real estate; but as we have seen, the Referee credited the contrary testimony of the bank manager and found that the written statement was made with intent to deceive since it omitted many debts on which the bankrupt was directly or contingently liable, including the note to his father, and that the bank had relied upon the statement in making the loans.

On petition for review of the Referee's holding the District Judge reached the opposite conclusion. He expressed himself as skeptical of the manager's testimony because no entry was made at the appropriate place on the printed form in regard to the bankrupt's salary and his income from his real estate, and because no entry was made showing affirmatively that no debts other than the mortgage debts and the contingent liability were due. The form, however, listed under the caption-Liabilities-various items of notes payable, accounts payable, and mortgages payable, and no entry as to these items except the mortgage indebtedness appeared. Consequently, the statement purported to show that the bankrupt had no indebtedness other than the mortgage debt; and the bank manager gave the positive testimony that he had gone over the statement with bankrupt item by item and that the only obligations which the bankrupt disclosed were the mortgage debts and the contingent liability. In

short, the District Judge without seeing or hearing the witnesses, discredited the banker's testimony and accepted the defense that the bankrupt was questioned only as to his mortgage indebtedness.

In our judgment, this conclusion should not be sustained, in view of the provisions of General Order in Bankruptcy No. 47, 11 U.S.C.A. following section 53, that the judge shall accept the findings of fact in the report of the Referee unless clearly erroneous. This rule is particularly significant when the Referee has heard the witnesses and the Judge has not. In this instance the Referee was impressed with the clear statement of the manager of the bank as opposed to the uncertain testimony of the bankrupt, and was especially influenced by the omission from the statement of the debt due to the bankrupt's father. The conclusion of the Referee was fortified by the provision of Section 14, sub. c, of the Bankruptcy Act that when an objector to a discharge of the bankrupt shows that there are reasonable grounds for believing that the bankrupt has committed any of the acts which prevent his discharge, the burden is on the bankrupt to prove that he has not committed any of such acts. We think the order of the Referee should have been sustained.

It has been held in the Second Circuit that when the correctness of a Referee's finding is at issue, the question is the same in the Court of Appeals as in the District Court, and that the Court of Appeals should accept the Referee's findings unless clearly erroneous. See Morris Plan Industrial Bank v. Henderson, 2 Cir., 131 F.2d 975. In this Circuit, however, the rule to be followed was announced in Judge Parker's opinion in Mutual Savings & Loan Ass'n v. McCants, 4 Cir., 183 F.2d 423, 426, in these words:

"We think that we should say, however, that it is the District Judge, not the referee, whose action is reviewed by this court. While we may not give to the finding of a District Judge reversing a finding by a referee as great weight as where the findings of the two are in accord, * * * we are not justified in ignoring the fact that the District Judge has passed on the matter. When he passes upon it, the finding which results is his, not that of the referee; and it is his finding, not the referee's, which we review, and we review it under no presumption that the referee, and not the judge, was the one who was right. Weight is to be accorded, of course, to the fact that the referee saw and heard the witnesses; but weight must also be given to the fact that it is in the judge that final judicial power in the District Court is vested, that he is ordinarily a man of sound judgment and wide experience and that action on his part reversing a referee is ordinarily taken only after careful consideration. To say that when he reverses the referee we must pass upon the latter's action just as though it had not been reversed and must sustain it unless clearly wrong without reference to what the judge has found, is to prescribe a rule of review which, in our opinion, does not accord due weight to the exercise of the judicial function by the District Judge. The correct rule, we think, is that we reverse the finding of the judge only if in our opinion it is clearly wrong and that, in making this decision, we should properly take into account, for what upon the record it may be worth, the fact that the referee, who had the advantage of seeing and hearing the witnesses, took a contrary view from the judge."

Applying this rule to the situation before us, we reach the conclusion that the order of the District Court should be reversed and the discharge of the bankrupt should be denied.

Reversed and remanded.