### Matter of Joseph Alfred MIZELL, Bankrupt.
### No. 1984.

Schoch & Schoch, High Point, N. C., for Joseph Alfred Mizell, petitioner.

Rollins & Rollins, Greensboro, N. C., and Martin & Whitley, High Point, N. C., for W. B. Byerly, Jr., Trustee in Bankruptcy for Joseph Alfred Mizell, respondent.

STANLEY, District Judge.

This matter comes before the court on the petition of Joseph Alfred Mizell, the bankrupt, for review of an order of the Referee in Bankruptcy dated March 6, 1958, which denied the discharge of the bankrupt.

The bankrupt filed a voluntary petition for bankruptcy on the 19th day of December, 1956, and was adjudicated a bankrupt on the same date.

On the 31st day of July, 1957, the Trustee in Bankruptcy timely filed specifications of objections to the bankrupt's discharge. The first specification objected to the discharge under Section 14, sub. c(2) of the Bankruptcy Act (11 U.S.C.A. § 32, sub. c(2)) for failure to keep adequate records, and the second specification objected to the discharge under Section 14, sub. c(4) of the Bankruptcy Act (11 U.S.C.A. § 32, sub. c(4)), for that, within the twelve month period immediately preceding the filing of the bankrupt's petition, the bankrupt, with intent to hinder, delay and defraud his creditors, transferred a 1955 Cadillac automobile to his wife. Three other specifications of objections were either withdrawn or dismissed by the referee, and are not before the court.

The referee, after hearing, made certain findings of fact and conclusions of law, which are contained in the order of which review is now sought. In his order, the referee concluded (1) that the bankrupt had failed to keep books of account or records from which his financial condition and his business transactions might be ascertained, and (2) that the bankrupt had, within twelve months prior to bankruptcy, transferred a 1955 Cadillac automobile to his wife with intent to hinder, delay and defraud his creditors, and denied the discharge.

When the matter was first brought before the court, the attorney for the bankrupt complained that the referee had considered evidence taken upon the examination of the bankrupt and his wife prior to the filing of objection to discharge, and that knowledge of this fact was first brought to light when the referee filed his order denying the discharge. A motion was thereupon made to give the bankrupt an opportunity to offer additional evidence before the court in explanation of some of the answers given to questions at the time he was examined before the objection to discharge was filed. Without objection, the motion was granted and the matter set for further hearing on July 31, 1958.

The only evidence offered at the further hearing was the introduction of transcripts of all prior examinations of the bankrupt and his wife, a brief examination of the bankrupt, and certain exhibits. At the conclusion of the hearing, counsel for the bankrupt and the trustee stated that they were of the opinion that no useful purpose would be served in having the testimony transcribed. I can only draw on my notes and memory as to the evidence given at the further hearing. It can be stated, however, that the testimony offered at

the hearing before the court did not materially add to or take from the testimony already appearing in the transcripts which accompanied the petition for review, except it was firmly established that the bankrupt had knowledge of his insolvency prior to June 1, 1956, the date he transferred the Cadillac automobile to his wife.

■ It probably would have been more procedurally correct to remand the matter to the referee for the taking of additional testimony, but both parties agreed that the court might hear the additional testimony and then decide the case on the basis of the evidence before the referee, supplemented by the additional evidence before the court. However, since all the evidence considered by the referee was formerly introduced in evidence at the time of the hearing before the court, and since the additional evidence did not materially change the record as considered by the referee, the matter is being decided by the court on the basis of the referee's certificate for review.

■ At the time of the hearing and oral arguments before the court, I expressed grave doubt as to whether the referee was justified in finding that the bankrupt had failed to keep adequate records as required by Section 14, sub. c(2) of the Bankruptcy Act. In view of this expression, the trustee did not argue this point in his brief and no further brief has been filed by the bankrupt since the hearing. In view of this state of the record, it is concluded that the referee was not justified in holding that the bankrupt should be denied his discharge on the basis of the first specification, namely, that the bankrupt failed to keep books of account and records from which his financial condition might be ascertained. However, since the referee has denied a discharge to the bankrupt on both the basis of inadequate records and a transfer with intent to hinder, delay and defraud creditors, the denial of the discharge must be upheld if there is sufficient reason to sustain either.

The bankrupt was engaged in an independent business selling veneer and lumber, both on his own account and as a broker. During the early part of 1956, the bankrupt traded for a 1955 model Cadillac automobile, the title of which was placed in his own name. The cost of the Cadillac was about $4,900, and monthly payments were approximately $117 a month. On June 1, 1956, the bankrupt transferred this Cadillac automobile to his wife, at which time there was a balance due on the mortgage of about $3,100. The bankrupt had an equity in the Cadillac at the time of the transfer of from $1,500 to $1,800. During the year of 1956, the bankrupt's wife traded an older Cadillac which was titled in her name for a 1956 Cadillac, which she still owned at the time her husband was adjudged a bankrupt on December 19, 1956. The bankrupt never stopped driving his Cadillac after the transfer of title to his wife, and has continuously used same in the conduct of his business.

The bankrupt testified that the transfer was made to secure a loan of $1,800 that his wife had made to him at an earlier date. At the time of the bankruptcy, the only assets of any value owned by either the bankrupt or his wife were either in the wife's name alone or in real estate held by entirety in the name of the bankrupt and his wife. The only asset of any appreciable value which had been in the name of the bankrupt alone during the twelve months prior to the petition in bankruptcy was the 1955 Cadillac automobile which he transferred to his wife.

The primary cause of the insolvency of the bankrupt was the insolvency of W. L. Lucas of Asheboro, North Carolina, and firms controlled by him. The bankrupt had sold to Lucas on his own account and endorsed various notes executed by Lucas. Since the bankrupt had extended credit to the Lucas interests for a substantial amount of money, his own insolvency became likely if the Lucas interests should ever become insolvent. The

bankrupt himself was very much aware of this fact. The following testimony, which was given by the bankrupt on June 28, 1957, before the referee, indicates his awareness of his financial position when the Lucas interests became insolvent:

"Q. When did you go insolvent, Mr. Mizell, do you remember? A. Well, I don't remember just the exact date, but this Lucas outfit down there, they hooked me for about $70,000, close about. I don't remember the exact date. Whenever they folded up, that's when it was.

"Q. Was it sometime in 1956? A. Yes.

"Q. Do you remember whether it was the summer or fall of 1956? A. Spring.

"Q. Spring of 1956? A. Yes, to my memory."

The court records show that the Lucas interests went into receivership on May 22, 1956. The bankrupt stated that he had been concerned with his own position in relation to the Lucas interests for sometime prior to the receivership, and that he had, previous to the receivership, requested and Lucas had promised to give him chattel mortgages on various pieces of machinery to secure him for the amount for which he was liable on his various accounts with Lucas. The bankrupt admitted in his testimony that he had followed the newspaper accounts of the court proceedings that were pending against Lucas.

The bankrupt testified that in 1950 he had bought a home in Florida and gave it to his wife as a gift, and that this home was sold in 1956 and the proceeds of the sale had been deposited to his wife's personal account. He further testified that sometime prior to the transfer of the Cadillac, his wife had loaned him about $1,800 out of the funds derived from the sale of the home. This transaction, and the reason for transferring the 1955 Cadillac to his wife on June 1, 1956, were explained by the bankrupt at the hearing on June 28, 1957, as follows:

"Q. Mr. Mizell, I ask you if in 1956 if you didn't transfer a Cadillac automobile to your wife? A. I did.

"Q. And as I understand it, that was for some $1800 that she loaned you or something to that effect? A. Well, it was some other money too that she had advanced out of her home that she had sold. That house belonged to her. It was in her name, bought in her name in 1950. She sold it in 1956 and my business wasn't so good, and she let me have money on more than one occasion, but in one particular occasion, she let me have $1800, and I transferred the equity in that car to her as a matter of protection. Why I did it was this, I got mixed up in this Lucas business down at Asheboro. In that particular case, I was having the merchandise billed to me, and I in turn was billing it to Lucas, and the thing had fallen apart, and several people had already instituted suits against me, and I voluntarily transferred the equity in the car to her as a matter of protection."

It must be conceded that if a valid debtor-creditor relationship existed between the bankrupt and his wife, the transfer of the 1955 Cadillac automobile, while it may have been preferential payment to a creditor, it would not have been such a transfer as to hinder, delay and defraud his creditors so as to justify denial of discharge. Viewing the record as a whole, and considering all the testimony given by the bankrupt and his wife concerning their financial dealings, it is difficult to find a basis to believe that they ever dealt with each other on a debtor-creditor basis.

In response to a question directed at the reason for transferring the 1955 Cadillac to his wife, the bankrupt gave the following testimony at a hearing before the referee on January 3, 1958:

"Q. But you did it to protect your wife's interest as a creditor, did you not, Mr. Mizell? A. Well, I didn't consider her a creditor. We

have always had everything together."

On the same subject, the wife of the bankrupt testified as follows at a hearing before the referee on June 28, 1957:

"Q. Do you know whether or not your husband gave you any personal property in 1956? A. No, sir. I don't think so. I bought a car.

"Q. Did he give you a car in 1956? A. Well, I don't know. We always figured it was joint, anything that we did since we have been married, we did it together."

The wife's testimony in general indicates her relative lack of familiarity with the financial arrangements and dealings with her husband, both in regard to her own property and the property in their joint names. The testimony of both the bankrupt and his wife indicates that the bankrupt handled all the financial transactions in connection with their property, whether listed in their individual names or in their names jointly. The testimony further indicates that the wife relied on her husband's judgment in financial matters and that he had a relatively free hand in managing all of their property.

The bankrupt further attempted to explain the transaction by stating that he was in such financial difficulty that he was on the verge of losing the 1955 Cadillac for inability to make the monthly payments, and that he wanted to protect his wife on the loan she had made him. The record indicates, however, that the bankrupt had a substantial income in 1956. A copy of his 1956 tax returns, which was introduced in evidence, indicates that he had a gross profit from his business for that year of almost $16,000, and a gross income on his rental property of almost $3,400. While it is true that the bankrupt, after deducting about $10,-600 for travel, telephone, entertainment, and other business expenses, and depreciation, and other deductible items on his rental property, had a net income of only about $5,000 for the year 1956, there is certainly no substantial basis for the claim that he was in imminent danger of losing his automobile for inability to meet the monthly payments.

Viewing the record as a whole, and the testimony of the witnesses, there would certainly be no basis for determining that the finding of the referee that the bankrupt had transferred his 1955 Cadillac automobile to his wife with intent to hinder, delay and defraud his creditors, was clearly erroneous. In fact, it is difficult to conceive how the referee could have found otherwise.

█ If the trustee, on his objection to discharge, has shown to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt transferred the automobile in question to his wife with intent to hinder, delay and defraud his creditors, the burden of proving that he has not committed such act is upon the bankrupt. Section 14, sub. c of the Bankruptcy Act (11 U.S.C.A. section 32, sub. (c)); Mountain Trust Bank v. Shifflett, 4 Cir., 1958, 255 F.2d 718. Further the court is required to accept the findings of fact in the referee's report unless clearly erroneous. General Order in Bankruptcy No. 47, 11 U.S.C.A. following section 53; Rule 53(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A.; Mountain Trust Company v. Shifflett, supra; In re Supnick, D.C.E.D.Pa.1958, 160 F.Supp. 355.

██ While the intent to hinder, delay and defraud creditors must be a specific intent and not merely a constructive intent, and the mere act of transfer of an asset is insufficient to bar discharge, here there is substantial evidence to support the conclusion that the transfer was made with specific intent to hinder, delay and defraud.

In Tibbs v. Caterinacci, 4 Cir., 1951, 191 F.2d 957, 958, the bankrupt transferred an automobile to his brother without apparent consideration within twelve months of bankruptcy. The bankrupt introduced evidence to the effect that his brother actually paid for the automobile and that he was merely holding title for the benefit of his brother. The court, in denying the discharge, said:

"There can be no doubt that when bankrupt registered the title to the automobile in his name without listing any lien or encumbrances thereon, it was presumptively his property and subject to the claim of his creditors."

In applying the foregoing firmly established principles of law to the factual situation here presented, and giving proper weight to the findings of the referee and the testimony presented before the court, it is concluded that the findings and conclusions of the referee in regard to the second specification should be affirmed, and that the bankrupt should be denied his discharge.

Counsel for the trustee will present a decree in conformity with this opinion.