**In the Matter of CUSTOM–BUILT HOMES, INC., Bankrupt.**

**No. 17–62.**

United States District Court
M. D. North Carolina,
Greensboro Division.

March 8, 1963.

Lawrence Egerton, Jr., and Joe Franks, Jr., Greensboro, N. C., for petitioners.

Harry Rockwell and Harry J. O'Connor, Jr., Greensboro, N. C., for Jordan J. Frassineti, Trustee in Bankruptcy for Custom-Built Homes, Inc., respondent.

STANLEY, Chief Judge.

This matter comes before the Court on petition of J. Boyd Smith, P. S. Dillard and Eva Dunagan for review of an order of the Referee in Bankruptcy, dated January 17, 1963, holding that the Trustee in Bankruptcy is the owner of a land development contract, free and clear of any claim of the petitioners.

The bankrupt, Custom-Built Homes, Inc., engaged in the business of building homes for sale in and near the City of Greensboro, North Carolina, was involuntarily placed in bankruptcy by action instituted on March 20, 1962. It had been in business for approximately two years prior to the adjudication.

On April 16, 1959, C. E. Loye and his wife, Viola Loye, hereinafter referred to as the Loyes, entered into a contract with Wade C. Euliss and Stedman H. Hines, hereinafter referred to as Hines and associates, whereby Hines and associates were to develop a twenty-acre tract of land near the City of Greens-

boro into residential lots. Each of the parties was to be responsible for certain development expenses, and Hines and associates were to receive twenty per cent of the net proceeds from the sale of each of the lots. R. E. Patton, Sr., subsequently acquired an interest in the contract and became associated with Hines and associates.

While the tract of land was in the process of being developed, the petitioners, J. Boyd Smith, P. S. Dillard and Eva S. Dunagan, approached Hines and associates with the idea of purchasing the Loye contract. At that time, and at all times pertinent, J. Boyd Smith was president, P. S. Dillard was vice-president, and Eva S. Dunagan was secretary-treasurer of the bankrupt corporation. They were likewise the sole officers, directors, and stockholders of the bankrupt corporation.

After some negotiations, it was agreed that Hines and associates would assign their interest in the Loye contract for the sum of $6,200.00 in cash, and the assumption by the assignees of certain obligations incurred by Hines and associates which were then outstanding. A written assignment of the contract was executed by Hines and associates on March 20, 1961. The typed assignment form left a blank for the names of the assignees. Upon executing the assignment, the assignees were designated as the petitioners.

On March 24, 1961, Wade C. Euliss and R. E. Patton, Sr., on behalf of Hines and associates, addressed a letter to the bankrupt corporation giving a list of the outstanding obligations which Hines and associates had incurred as of March 23, 1961, and which the assignees of the Loye contract were to assume and pay. These obligations amounted to $4,849.67, and were in addition to the $6,200.00 payable at the time of the execution of the assignment. There were certain other minor adjustments referred to in the letter. The letter from Euliss and Patton referred to the outstanding obligations which the *bankrupt corporation* was to assume in connection with the assignment.

In order to effect a purchase of the contract, J. Boyd Smith, one of the petitioners, borrowed the sum of $6,200.00 from Guy Turner of the State of Florida, and deposited same to the general account of the bankrupt corporation. Three checks were then drawn on the bank account of the bankrupt corporation to Hines and associates totaling $6,200.00, less a tax adjustment in the amount of $110.90, as follows: One check in the amount of $3,089.10, dated March 24, 1961; another check in the amount of $1,500.00, dated May 9, 1961, and the last check in the amount of $1,500.00, dated May 31, 1961. All these checks were duly paid on presentation, and were charged to the account of the bankrupt corporation. The evidence is not clear as to how the assumed obligations totaling $4,849.67 were paid. The aforementioned three checks given by the bankrupt corporation to Hines and associates contained the notation that they represented payment on the Lawndale contract, which is the same as the Loye contract.

The May 1, 1961, balance sheet of the bankrupt corporation showed the Loye contract among its assets. Specifically, the balance sheet showed as an asset "Land held for sale—Lawndale Estates—C. E. Loye Property—20% Equity (23 Lots @ $2750.00 Market Value)—$14,650.00." The same balance sheet listed among the liabilities of the bankrupt corporation a note payable on the C. E. Loye property of $6,200.00. The accountant who prepared the balance sheet testified that it was prepared under the direction of the officers and directors of the bankrupt corporation, and that he knew nothing about the affairs of the corporation except the information furnished him by its officers and directors.

The bankrupt corporation purchased from the Loyes several of the lots covered by the development contract. Each lot sold for $2,750.00. In connection with each purchase the bankrupt corporation gave the Loyes a note and deed of trust

for the full purchase price, but each note contained the following provision:

"Credit is to be given to Custom-built Homes, Inc. according to the contract between C. E. Loye and wife and Wade C. Euliss and Stedman Hines, dated April 16, 1959, and Euliss' and Hines' interest later being assigned to Custom-Built Homes, Inc."

On December 14, 1961, petitioners executed a contract pledging their interest in the Loye contract to Guy Turner to secure the loan in the sum of $6,200.00, and interest, which was allegedly borrowed from Guy Turner by J. Boyd Smith, one of the petitioners, at the time the contract was acquired from Hines and associates. This contract was never executed by Guy Turner, and has never been recorded.

On September 12, 1962, the Trustee of the bankrupt corporation filed a petition with the Referee asking that the Loye contract be adjudged to be an asset of the bankrupt corporation. In apt time, each of the petitioners filed a response denying that the bankrupt corporation had any interest in said contract and alleging that the contract was the joint property of the petitioners.

After hearing, the Referee found that the three petitioners, while the named assignees in the assignment from Hines and associates, actually held the contract in trust for the bankrupt corporation, and that the Trustee in Bankruptcy held such contract free and clear of any claims of the petitioners. The petition for review followed.

■ The Court is required to accept the findings of fact in the Referee's report, unless clearly erroneous. General Order in Bankruptcy No. 47, 11 U.S.C.A. following Section 53; Rule 53(e) (2), Federal Rules of Civil Procedure; Mountain Trust Bank v. Shifflett, 4 Cir., 255 F.2d 718 (1958); and In re Supnick, 160 F.Supp. 355 (E.D.Pa., 1958). This is especially true when the findings of the referee are based upon conflicting evidence, and where the credibility of witnesses is involved. When the referee has heard the witnesses and observed their demeanor, great weight attaches to his conclusions.

■ Additionally, there can be no question but that the petitioners were fiduciaries in their dealings with the bankrupt corporation. In Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), it is stated:

"A director is a fiduciary. * * * So is a dominant or controlling stockholder or group of stockholders. * * * Their powers are powers in trust. * * * Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. * * * The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside. * * *

" * * * In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate. And its duty so to do is especially clear when the claim seeking allowance accrues to the benefit of an officer, director, or stockholder."

■ With the foregoing legal principle in mind, we turn now to an examination of some of the more pertinent facts upon which the decision of the Referee was based. The petitioners contend that the $6,200.00 borrowed by the petitioner Smith from Guy Turner was a personal transaction and that the petitioners were the only ones that have ever owned any interest in the Loye contract under the assignment executed by Hines

and associates on March 20, 1961. It is claimed that the check was only deposited to the bank account of the bankrupt corporation for clearance since the petitioners did not maintain a personal bank account. However, except for the testimony of the petitioners, and the face of the assignment from Hines and associates, all the evidence indicates that the bankrupt corporation was the actual purchaser of the Loye contract. It is significant that the proceeds from the $6,200.00 Turner loan, which was deposited to the bank account of the bankrupt corporation, was not disbursed to Hines and associates as soon as the check cleared. The sum of $3,089.10 ($3,200.00 less a tax adjustment) was paid on March 24, 1961, but the balance of the $6,200.00 was not paid until May 9, 1961, and May 31, 1961. If the petitioners are correct in their assertion that the $6,200.00 check was only deposited for clearance, it is difficult to understand why the entire proceeds of the check were not disbursed at one time. It is also significant that on March 24, 1961, four days after the assignment, Euliss and Patton wrote the bankrupt corporation in connection with *its* purchase of their interest in the Loye contract. If this was not true, no steps were taken to correct the error. The fact that the contract was carried on the balance sheet of the bankrupt corporation as an asset, and the fact that the $6,200.00 Turner check was carried as a liability, strongly indicate the contract was the actual property of the bankrupt corporation. Certainly, the petitioners had access to their books and records and knew, or should have known, of these entries being made on their books. They were the sole officers, directors and stockholders of the bankrupt corporation. While the accountant had no specific recollection as to who told him to place the Loye contract on the balance sheet in such a fashion, his statement that the information came from some of the officers and directors of the bankrupt corporation is persuasive. Additionally, in a number of notes given in connection with the purchase of lots by the bankrupt corporation from the Loyes, reference was made to the assignment of the Loye contract by Hines and associates to Custom-Built Homes, Inc. These notes were all signed by two of the petitioners. The assignment by the petitioners to Guy Turner in December, 1961, which was not executed by Turner, and has never been recorded, could be considered nothing more than a self-serving declaration.

Viewing the record as a whole, there is clearly no basis for holding that the findings of the Referee were clearly erroneous. In fact, it is difficult to conceive how he could have found otherwise. It follows that the findings and conclusions of the Referee that the Trustee in Bankruptcy holds the Loye contract free and clear of any claims of the petitioners must be affirmed.

Counsel for the Trustee will prepare and present an appropriate decree in conformity with this opinion.