MICHIE BRADY v. FUNERAL BENEFIT ASSOCIATION OF THE STATE CAMP PATRIOTIC ORDER SONS OF AMERICA OF NORTH CAROLINA, INCORPORATED, AND WASHINGTON CAMP NO. 58, PATRIOTIC ORDER SONS OF AMERICA.

(Filed 28 June, 1933.)

1. **Insurance T c—Rights under policy in mutual benefit association held forfeited by insured's failure to pay dues.**

   The members of a local camp of an order were insured by its affiliated mutual benefit association, the members of the camp paying dues to the camp and the camp paying assessments to the association. The by-laws of the association provided that no benefits should be paid for the death of a member who was more than thirteen weeks in arrears in his dues. Insured was thirty-five weeks in arrears in his dues to the camp at the date of his death, but the camp had paid to the association all premiums for all its members, including the insured: *Held*, under the association's by-laws the beneficiary named in the policy was not entitled to recover on the policy, other by-laws of the association relating to the payment of benefits by the local camps not being repugnant to the by-laws providing for forfeiture of benefits for nonpayment of dues.

2. **Estoppel C a—**

   Waiver is an intentional relinquishment of a known right, and knowledge of the right and intent to waive must be made plainly to appear.

3. **Insurance T c—Association's retention of premiums from local order held not to constitute waiver of insured's failure to pay dues.**

   The members of a local camp of an order were insured by its affiliated mutual benefit association, the members of the camp paying dues to the camp and the camp paying assessments to the association. The local camp paid assessments to the association on all its members and the association accepted payment without knowledge that insured, one of the members of the local camp, was grossly in arrears in his dues. *Held*, the assessment of insured as a member was paid by the local camp and not by insured, and the association's acceptance of payment without knowledge of insured's bad standing did not constitute a waiver, nor does its retention of the assessment after knowledge constitute a waiver, the question of refunding being a matter of adjustment between the camp and the association, and the camp not being an agent for insured in paying the assessment, the camp being forbidden to do so by the by-laws of the association.

CLARKSON, J., dissenting

APPEAL by defendants from *Cowper, Special Judge,* at March Term, 1933, of CABARRUS. Reversed.

*Hugh G. Mitchell and Hartsell & Hartsell for appellants.*
*Armfield, Sherrin & Barnhardt for appellee.*

ADAMS, J. Washington Camp No. 58 is a fraternal organization located at Kannapolis and the Funeral Benefit Association is licensed by the State of North Carolina to insure the members of Washington Camp. The association insured the life of C. R. Brady, a member of the camp, in the sum of five hundred dollars. The insured died on 5 September, 1931, and the plaintiff was named as the beneficiary of the insurance. She furnished proof of loss and upon their refusal to make payment brought suit against the defendants.

At the time of his death the insured was in arrears for more than thirty-five weeks in the payment of his dues to the local camp. According to the "laws, rules, and by-laws" the camp agreed to make no claim on the association for funeral benefits upon the death of any of its members (b) when the deceased member was not in good standing in the camp at the time of his death and entitled to benefits from the camp according to the laws of the National and State Camps and the constitution and by-laws of the Washington Camp, or (g) if the deceased member was in arrears for dues to his camp for more than thirteen weeks at the time of his death. Article 3, sec. 3.

It was likewise provided that no camp should receive funeral benefits from the association in the following cases: . . . (c) If the member by reason of whose death the claim is made was not in good standing in his camp and in the order as provided by the laws of his camp and the laws of the State and National Camp, or (f) for the death of a member in arrears for dues to his camp for over thirteen weeks at the time of his death. Article 12, secs. 1, 2.

While the foregoing articles embody the pertinent agreement between the camp and the association with respect to the exclusion of funeral benefits, the plaintiff relies upon Article 3, sec. 2, which provides in substance that every camp must have a local law requiring payment to the beneficiary of the deceased member of the full amount *received* from the association, irrespective of the time of his membership or financial standing, less the cost of probate and charges due the camp; but this provision was obviously intended to prevent the diversion or dissipation of the funeral benefit and to assure its payment to the beneficiary.

The financial secretary of the camp testified as follows: "I didn't do anything with reference to paying his dues to the Funeral Benefit Association up to the time he died. We get a card from the State secretary, every member that is on the roll at the first of each month, and we are supposed to pay that on the 20th of each month. I never dropped him from the roll until after he was dead. I never notified the State secretary that he had been dropped until after he died. I paid the Funeral Benefit Assessments against our camp of all members that were on the roll each month, including Mr. Brady, up to his death. I dropped him as soon as I found out he was dead."

From this testimony the plaintiff draws the conclusion that the association received the funeral assessments and is consequently liable for payment of the insurance. This is a misconception. The assessments were not paid by the deceased whose dues were grossly in arrears; the association did not know the deceased was in "bad standing" with the camp; and if, after receiving this information it had paid the insurance it would have violated the express terms of its agreement with the camp.

The trial court submitted two issues: the first, whether the association had waived the provisions contained in its laws and introduced in evidence; the second, the amount alleged to be due the plaintiff.

The court instructed the jury to answer the first issue in the affirmative if they found the facts to be as testified and as the evidence tended to show, being of opinion that the defendant, having received the $3.00 from the local order, having learned that it was paid for the benefit of the deceased, having held it from that time, and not having returned it, had waived the provisions offered in evidence. The trial resulted in a verdict and judgment for the plaintiff, from which the defendants appealed.

The defendants did not except to the instruction on the ground that a directed verdict is never permissible, for if all the evidence is practically one way in regard to the essential facts it is not error to instruct the jury, if the facts are found to be as stated in the testimony, to answer the issue as indicated in the charge. *Gaither v. Ferebee,* 60 N. C., 303; *Wetherington v. Williams,* 134 N. C., 276; *Grain Co. v. Feed Co.,* 179 N. C., 654; *Trust Co. v. Ins. Co.,* 201 N. C., 552. The question is whether the evidence establishes a waiver as a matter of law.

Waiver is the intentional relinquishment of a known right. It is usually a question of intent; hence knowledge of the right and an intent to waive it must be made plainly to appear. *Mfg. Co. v. Building Co.,* 177 N. C., 103. "There can be no waiver unless so intended by one party and so understood by the other, or unless one party has so acted as to mislead the other." 2 Herman on Estoppel, sec. 825.

When the financial secretary of the camp paid the funeral benefit assessment the association did not know that the deceased had forfeited his right to the insurance. The court, therefore, applied the doctrine of waiver only to the retention of the assessment by the association with knowledge of the "bad standing" of the insured.

In our opinion there is error in the instruction. The insured paid no assessment after 1 January, 1931. The amount subsequently paid was advanced by the camp. The camp cannot be deemed to have been the agent of the insured for this purpose, because it had no legal right to act as such agent in direct violation of its contract with the association. Indeed, the association received no money from the insured after

the first day of January and was therefore under no obligation to make any remittance to the beneficiary after acquiring knowledge of all the facts. The question of refunding is a matter to be adjusted between the defendants.

Furthermore, there is no evidence of an intention on the part of the association to appropriate to its own use the amount advanced by the camp. *Matthews v. Ins. Co.*, 147 N. C., 339. It has indicated its readiness to return the money, although it may have no right prematurely to demand a receipt.

This is a case to which the language of the Court in *Hay v. Association*, 143 N. C., 256, may appropriately be applied: "It is always sad when one who has made payments on his policy deprives his family of expected protection by failure to pay at a critical time. But insurance is a business proposition, and no company could survive if the insured could default while in good health, but retain a right to pay up when impaired health gives warning. It is a warning of which the company also has a right to take notice when asked to waive a forfeiture. It is the insured's own fault when he does not make a payment as contracted."

As to the plaintiff the judgment of nonsuit should have been allowed, but as to the defendants the cause may be retained for adjustment of their rights as to the amount advanced to the association.

Reversed.

CLARKSON, J., dissenting.