Mary E. MOORE et al., Plaintiffs,

v.

The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, Defendant.

Civ. A. No. 1059–G.

United States District Court
M. D. North Carolina,
Greensboro Division.

Oct. 7, 1958.

Long, Ridge, Harris & Walker, Burlington, N. C., and Sapp & Sapp, Greensboro, N. C., for plaintiffs.

Wharton & Wharton, Greensboro, N. C., for defendant.

STANLEY, District Judge.

The plaintiff alleges in her complaint that on June 17, 1937, the defendant, The Prudential Insurance Company of America, issued to her deceased husband, Edwin Holt Moore, a policy of life insurance numbered 9854254 for $20,000, with double indemnity in the event of death by accidental means, and that said policy of insurance was in full force and effect when the insured, Edwin Holt Moore, died on October 14, 1955. It is further alleged that said insured suffered his death as a result directly and independently of all other causes, of bodily injuries, effected solely through external, violent, and accidental means, and that the plaintiff, beneficiary under said policy of insurance, having filed due proof of the death of the insured, and the manner of his death, and having complied with the other policy provisions, is entitled to recover of the defendant the $20,000 death benefits and, in addition, the sum of $20,000 on account of the death of the insured by accidental means.

The defendant in its answer admits the issuance of said policy of insurance, the death of the insured while the policy was in force, and its liability under said policy for the face amount thereof of $20,000, but denies any liability under the provisions of said policy for benefits in the event of death by accidental means. As a "further second defense", the defendant alleges that it has been given no proof that the death of the insured was under such circumstances as to bring his death within the coverage of the policy provisions for accidental means death benefits, and denies that the death of the insured was the result directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means.

The plaintiff filed a reply to the affirmative defenses set up in the defendant's answer, and with respect to the defendant's "second further defense", the plaintiff alleges in Paragraph 2 of her reply that the defendant had theretofore accepted a proof of claim for accidental death benefits under another policy of insurance (Policy No. GC–10434) issued by the defendant company on the life of Edwin Holt Moore, in which the provisions for coverage for accidental death benefits were identical to those contained in the policy involved in this suit, and that by accepting such proof of claim, and by recognizing the validity of and paying such claim, the defendant has waived any right it now has and is now estopped to deny that the death of the insured was under such circumstances as to bring his death within the coverage of the policy provisions for accidental means death benefits. The plaintiff further alleges that the payment by the defendant of accidental death benefits under policy numbered GC–10434 is an admission on the part of the defendant that the death of the insured was by accidental means, and is a waiver of its rights to deny that the proof of claim furnished did not in fact disclose that the death of the insured was under such circumstances as to bring his death within the coverage of the policy provisions for accidental means death benefits.

The defendant timely moved, pursuant to the provision of Rule 12(f), Federal Rules of Civil Procedure, 28 U.S.C.A., for an order striking all of Paragraph 2 of the reply, which relates to the defendant's second further defense, for the reason that said allegations are immaterial and insufficient in law and as a matter of fact to establish either an admission, waiver or estoppel against the defendant.

From stipulations and uncontradicted affidavits filed in connection with the defendant's motion to strike, it appears that in 1950 the defendant issued its group accidental death policy numbered GC–10434 to the Tower Hosiery Mills, Inc., under and by which the officers and

employees of said company were insured for varying amounts due to loss of life by accidental means, and that Edwin Holt Moore, the president of Tower Hosiery Mills, Inc., was insured under said policy for $2,500 for death by accidental means. Shortly after the death of the said Edwin Holt Moore, and on or about December 13, 1955, the Tower Hosiery Mills, Inc., through its Secretary and Treasurer, R. A. Maynard, filed proof of claim with the defendant for benefits for death by accidental means under said group policy numbered GC–10434, by reason of the death of Edwin Holt Moore. Attached to the proof of claim was a copy of certificate of death of said insured signed by Dr. Hubert T. Dukes, of the Duke Hospital, Durham, North Carolina, certifying that the disease or condition directly leading to the death of said insured was subdural hematoma with cerebral injury, and that the antecedent cause of death was due to "accidental fall". The defendant considered said claim on the basis of the information given by R. A. Maynard, secretary and treasurer of the group policy holder, and said statements in the certificate of death. No independent investigation was made by the defendant with respect to the manner in which said insured suffered his death, and said claim was paid on December 15, 1955, by check payable to the plaintiff, Mary E. Moore, the beneficiary under said policy of insurance.

Shortly after receipt of the accidental death benefit check under the aforementioned policy numbered GC–10434, the plaintiff filed proof of claim with the defendant company under policy numbered 9854254, claiming $20,000, the face amount of the policy for death benefits, and the sum of $20,000 for the death of the insured by accidental means. Attached to this proof of claim was the certificate of Dr. Guy L. Odom, of Duke Hospital. Dr. Odom listed the disease or condition directly leading to death of the insured as being "right temporal intra-cerebral hematoma and subdural hematoma" and the antecedent cause of death

as being cirrhosis of the liver. In response to a question appearing on the form "If death was due to accident, suicide or homicide, specify which", Dr. Odom answered that "Patient fell and struck his head." Upon receipt of Dr. Odom's certificate, the defendant declined to pay the accidental death benefits under said policy of insurance and demanded that the plaintiff furnish further proof that the insured's death was under such circumstances as to bring his death within the coverage of the policy provisions relating to death by accidental means. No further information was supplied, and by reason of information acquired by the defendant through an independent investigation, the defendant declined to pay the accidental death benefits under said policy and this litigation ensued.

It appears that the general principles of law to be followed by courts in considering motions to strike under Rule 12(f) are as follows: (1) The court has a broad discretion in disposing of motions to strike and may, under Rule 12(f), Federal Rules of Civil Procedure, order stricken from a pleading matters which are improper. Barron and Holtzoff on Federal Practice and Procedure, Volume 1, Section 367; (2) motions to strike are not favored and will usually be denied unless the allegations have no possible relation to the controversy and may prejudice the other party. Barron and Holtzoff on Federal Practice and Procedure, Volume 1, Section 367, and Brown and Williamson Tobacco Corp. v. United States, 6 Cir., 1953, 201 F.2d 819; (3) in considering motions to strike, well pleaded facts must be accepted as true, but such motions do not admit mere conclusions of law, nor conclusions of fact or of law and fact. United States v. Southerly Portion of Bodie Island, North Carolina, D.C.E.D.N.C.1953, 114 F.Supp. 427; (4) failure to move to strike from a pleading allegations regarded as irrelevant may give rise to an inference at the trial that they are admitted. Barron and Holtzoff on Federal Practice and Procedure, Volume 1, Section 367; Mutual

Life Insurance Co. of New York v. Daigle, 5 Cir., 1944, 142 F.2d 1000; and (5) when the facts are determined, and are all one way, the question of waiver becomes a matter of law. Gouldin v. Inter-Ocean Insurance Company, 1958, 248 N.C. 161, 102 S.E.2d 846.

In light of the above, it would appear that the defendant's motion to strike should be denied if it can be determined on the basis of the admitted facts that the allegations complained of have some possible relation to the controversy. On the other hand, if the allegations have no relation to the controversy, and are insufficient in law to establish either an admission, waiver or estoppel, and evidence in support of the allegations would be inadmissible at the trial, the defendant would undoubtedly be prejudiced by the allegations remaining in the reply, and the defendant's motion should be granted.

The terms "waiver" and "estoppel" have well defined meanings in the field of insurance law.

" 'Waiver' is the voluntary, intentional relinquishment of a known right * * * The circumstances must indicate that the relinquishment is intended by the insurer, and the insurer must have full knowledge of all facts pertaining thereto.

" 'Estoppel', on the other hand, refers to an abatement raised by law of rights and privileges of the insurer where it would be inequitable to permit their assertion. It necessarily implies prejudicial reliance of the insured upon some act, conduct or nonaction of the insurer * *

"Waiver arises by the act of one party; estoppel by operation of law. Waiver depends upon knowledge of the insurer; estoppel upon a prejudicial change of position by the insured. * * * " 16 Appleman Insurance Law and Practice, Section 9081.

"In insurance law, to constitute a waiver, there must be an actual intention to relinquish an existing right, benefit, or advantage, with knowledge, either actual or constructive, of its existence, or such conduct as to warrant an inference of such intention to relinquish. * * * " 16 Appleman Insurance Law and Practice, Section 9085.

"As a general rule, in order to waive a policy provision or a forfeiture, there must be a prior knowledge of the circumstances, a waiver being the intentional relinquishment of a known right and requiring both knowledge of the existence of the right and an intention to relinquish it * * * ." 16 Appleman Insurance Law and Practice, Section 9086.

The rule with respect to waiver has been stated by the Supreme Court of North Carolina in Brady v. Funeral Benefit Ass'n, 1933, 205 N.C. 5, 169 S.E. 823, 824, as follows:

"Waiver is the intentional relinquishment of a known right. It is usually a question of intent; hence knowledge of the right and an intent to waive it must be made plainly to appear. Danville Lumber & Manufacturing Co. v. [Gallivan] Building Co., 177 N.C. 103, 97 S.E. 718. 'There can be no waiver unless so intended by one party and so understood by the other, or unless one party has so acted as to mislead the other.' 2 Herman on Estoppel, § 825."

In considering the question here presented, it should be borne in mind that no allegation or contention has been made by the plaintiff that she has in any way been prejudiced, or has been caused to change her position with respect to the $20,000 policy, by reason of the payment by the defendant of the $2,500 policy. It should be further borne in mind that the defendant has stipulated that the proof filed in connection with the policy in suit was timely and was sufficient to make demand for the face amount of the policy and also the benefits in the event of death by accidental means, but simply denies that the plaintiff furnished *due proof*

that the death of the insured was in fact the result of accidental means as described in the policy.

Since the plaintiff has made no allegation or contention that she has been caused to change her position in any respect by reason of the payment by the defendant of the accidental death benefits under the $2,500 policy, or has been prejudiced in any other manner, it is obvious that the doctrine of estoppel has no application to the factual situation here presented. If the allegations contained in Paragraph 2 are to remain in the reply on the theory that it has some application to the controversy here involved, it will have to be on the theory of waiver.

It is abundantly clear that the defendant did not have knowledge of all the facts at the time it paid the $2,500 under the group accident policy. Application for the death benefits under the $2,500 policy was made by the Secretary and Treasurer of the Tower Hosiery Mill, Inc., the group policy holder, and so far as the record discloses, the plaintiff, who was the beneficiary under said group policy, had nothing to do with the filing of that application. The only information furnished with respect to the manner in which the insured met his death was a death certificate which stated that the antecedent cause of death was by accidental fall. When the application was filed by the plaintiff under the $20,000 policy, additional information was supplied. Dr. Guy L. Odom refused to state whether or not the insured suffered his death by accident, suicide or homicide, and the defendant decided to make an independent investigation. No effort has been made to declare a forfeiture of the $20,000 policy, or to interpose any defense other than to deny that the insured suffered his death by accidental means as described in the policy of insurance. Under these circumstances, it clearly cannot be said that the defendant intentionally relinquished a known right at the time it paid the death benefits under the $2,500 group accident policy. There were many pertinent facts that were not within its knowledge at the time of the payment. Further, the plaintiff has not been caused to change her position in any respect, and neither has she been lulled into a false security.

With respect to the policy in suit, the defendant acknowledges its liability for the death benefits, but demands proof that the insured suffered his death by accidental means. If this fact can be established by competent evidence, the plaintiff is entitled to all the relief sought in the action. If she is not able to establish death by accidental means, it would be shocking and inequitable to hold that the defendant by the simple payment of the accidental death benefits under the group policy fixed its liability to pay the $20,000 death benefits under the policy involved in this action, and thereby relieve the plaintiff of the necessity of proving this fact.

The settlement of controversies out of court is favored, and such action is encouraged "by securing to every man the opportunity to negotiate for the purchase of his peace without prejudice to his rights." Penn Dixie Lines v. Grannick, 1953, 238 N.C. 552, 78 S.E.2d 410, 413. To hold that the defendant, under the circumstances here involved, had waived its right to require proof of death by accidental means would, in the opinion of the court, have a tendency to require insurance companies to be unduly cautious in the settlement of claims, and put insureds to unnecessary trouble, delay and expense in obtaining funds rightfully due them.

The plaintiff cites a number of North Carolina cases in support of her position that the doctrine of waiver is applicable in this case. All of these cases have been carefully examined, but none are analogous to the factual situation here involved. As a matter of fact, neither side has been able to cite a case factually similar to this case, and both rely upon either general statements of law or language used by courts in cases clearly not in point.

It is concluded that the allegations contained in Paragraph 2 of the reply have no relation to this controversy, are insuf-

**220**

ficient in law to establish either an admission, waiver or estoppel, and that the defendant's motion to strike should be granted. Counsel for the defendant will prepare an order in conformity with this opinion.