PHILLIP W. HAGLER v. DOROTHY DALE HAGLER

No. 276PA86

(Filed 7 April 1987)

**Divorce and Alimony § 30; Husband and Wife § 11.2— separation agreement—equitable distribution not mentioned—bar to equitable distribution**

    A separation agreement fully disposed of the parties' property rights arising out of the marriage and acted as a bar to equitable distribution, even though equitable distribution was not mentioned in the agreement, where it was apparent from the scope of the agreement that it was intended as a comprehensive settlement; the very existence of the agreement evinced an intention by the parties to determine for themselves their property division and future relationship; both parties were represented by counsel; and there was no attempt to show fraud or duress by either party.

    Justice MARTIN dissenting.

    Justice MITCHELL joins in the dissenting opinion.

ON discretionary review of a unanimous unpublished opinion of the Court of Appeals, 80 N.C. App. 166, 341 S.E. 2d 619 (1986), reversing summary judgment entered in favor of the plaintiff by *Blackwell, J.*, at the 9 May 1985 Civil Non-jury Session of District Court, ROCKINGHAM County.

On 21 January 1985, plaintiff-husband filed a complaint for absolute divorce from defendant-wife based upon a one-year separation. The wife answered, admitting the allegations in the complaint and requesting that the court make an equitable distribution of marital property under N.C.G.S. § 50-20. The husband moved for summary judgment alleging that a separation agreement entered into by the parties in 1983 precluded any equitable distribution. The matter was heard by the Honorable Robert R. Blackwell, who entered summary judgment for the husband on 14 May 1985. On appeal, the Court of Appeals reversed. We allowed the husband's petition for discretionary review on 28 August 1986. Heard in the Supreme Court 10 February 1987.

    *Gwyn, Gwyn & Farver, by Julius J. Gwyn, for plaintiff-appellant.*

    *Mary K. Nicholson for defendant-appellee.*

MEYER, Justice.

Husband and wife were married in September 1962. In July 1983, they entered into a separation agreement, the construction of which comprises the primary issue in this case. This agreement, duly recorded by the Register of Deeds of Rockingham County, contains provisions disposing of the marital residence, alimony, child support, child custody, remarriage, responsibility for outstanding bills, and acquisition of future property. In addition, the agreement contains these two paragraphs:

3. RELEASE BY "HUSBAND." The "HUSBAND" does hereby release and relinquish unto the "WIFE," her executors, administrators, distributees, heirs and assigns, all right of future support except as may be herein specifically provided, and all right of curtesy, inheritance, descent and distribution, and any and all other rights arising out of the marriage relation in and to any and all property now owned by the "WIFE," or which may be hereafter acquired by her and further does hereby release the right to administer upon her estate.

4. RELEASE BY "WIFE." The "WIFE" does hereby release and relinquish unto the "HUSBAND," his executors, administrators, distributees, heirs and assigns, all right of future support except as may be herein specifically provided, and all right of dower, inheritance, descent and distribution, and all other rights arising out of the marriage relationship in and to any and all property now owned by the "HUSBAND," or which may be hereafter acquired by him, and further does hereby release the right to administer upon his estate.

In the wife's answer to the husband's complaint for divorce, she did not allege a counterclaim but simply asked, in her prayer for relief, that "the court perform an equitable distribution of marital property to the parties pursuant to N.C.G.S. § 50-20." She did not allege that there was any marital property remaining to be distributed. A judgment of absolute divorce was entered on 21 March 1985. Thereafter, on 26 March 1985, husband moved for summary judgment on the wife's prayer for equitable distribution, arguing that the separation agreement precluded equitable distribution. The trial court granted husband's motion for summary judgment, agreeing with him that the agreement was a bar to equitable distribution.

On appeal, the Court of Appeals reversed, the basis of the opinion being that the separation agreement did not mention "marital property" as one of the items divided; therefore, marital property, if any, was still subject to equitable distribution.

A party moving for summary judgment is entitled to such judgment if he can show, through pleadings and affidavits, that there is no genuine issue of material fact requiring a trial and that he is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56 (1983); *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). Our inquiry, then, is whether there was a factual issue raised concerning the existence of "marital property," other than that dealt with by the terms of the agreement, that would have been the subject of equitable distribution. This requires an examination into what property was the subject of the separation agreement and what property may be the subject of the Equitable Distribution Act.

Prior to the enactment of the Equitable Distribution Act, N.C.G.S. § 50-20 (1984 & Supp. 1985), the property accumulated by parties to a marriage went, upon divorce, to the person in whose name the property was titled. *See generally*, 1 R. Lee, *N.C. Family Law* § 34 (4th ed. 1979 and Supp. 1985). While a wife may have made substantial contributions to the financial well-being of the family during the course of the marriage, she had no legal claim to property except that to which she was the record owner.

The Equitable Distribution Act was intended to alleviate many of the problems that had existed in property divisions of divorced couples. *White v. White*, 312 N.C. 770, 324 S.E. 2d 829 (1985). *See generally* Sharp, *Equitable Distribution of Property in North Carolina: A Preliminary Analysis*, 61 N.C. L. Rev. 247 (1983); *see also Mims v. Mims*, 305 N.C. 41, 286 S.E. 2d 779 (1982). The act provides for a judicial determination of the distribution of the property accumulated during the marriage, a distribution reflecting the contribution of each party to the family, whether that contribution be in the form of wages brought in or domestic services provided. Only this "marital property" may be distributed under this statute. "Separate property," acquired before marriage or given to one spouse by a third party, is unaffected. N.C.G.S. § 50-20(b) (Supp. 1985).

While the effect of the act is to give the non-title spouse an equitable claim in marital property, it does not displace the traditional principles of property ownership. Thus, in the absence of an equitable distribution under N.C.G.S. § 50-20, the state of the title of property owned by either spouse or by both spouses is unaffected. Nothing in the act creates a new form of ownership such as that recognized in "community property" states. Greene, *Comparison of the Property Aspects of the Community Property and Common-Law Marital Property Systems and Their Relative Compatibility With the Current View of the Marriage Relationship and the Rights of Women*, 13 Creighton L. Rev. 71 (1979).

Equitable distribution is a property right. N.C.G.S. § 50-20(k) (1984); *Wilson v. Wilson*, 73 N.C. App. 96, 325 S.E. 2d 668 (1985). Therefore, a married person is entitled to maintain an action for equitable distribution upon divorce if it is properly applied for and not otherwise waived. However, equitable distribution is not automatic. The statute provides that a party seeking equitable distribution must specifically apply for it. This may be done either by way of cross-action in an action brought for absolute divorce or as a separate action. N.C.G.S. § 50-21 (1984 & Supp. 1985). There is nothing in the statute regarding the sufficiency of the pleadings to support a claim for equitable distribution.

Our statutes also contain a mechanism whereby the parties to a marriage may forego equitable distribution and decide themselves how their marital estate will be divided upon divorce. N.C.G.S. §§ 50-20(d), 52-10.1 (1984). These agreements are favored in this state, as they serve the salutary purpose of enabling marital partners to come to a mutually acceptable settlement of their financial affairs. *See* Sharp, *Divorce and the Third Party: Spousal Support, Private Agreements, and the State*, 59 N.C. L. Rev. 819 (1981). A valid separation agreement that waives rights to equitable distribution will be honored by the courts and will be binding upon the parties. N.C.G.S. § 52-10 (1984); *Blount v. Blount*, 72 N.C. App. 193, 323 S.E. 2d 738 (1984); *Blankenship v. Blankenship*, 234 N.C. 162, 66 S.E. 2d 680 (1951).

Paragraphs 3 and 4 of the separation agreement in question here release each spouse from the common law rights incident to marriage (dower, curtesy, inheritance, descent, and distribution), as well as "all other rights arising out of the marital relationship

in and to any and all property." As this language does not refer specifically to the right of equitable distribution, we must consider whether the language nonetheless sufficiently encompasses this right to be a valid release of it. In this, we are guided by the language of the agreement as it reflects the intention of the parties. *Blankenship v. Blankenship*, 234 N.C. 162, 66 S.E. 2d 680. We may also assume that each spouse, represented by counsel, was aware of the nature of the property rights he or she had before waiving any or all of them. A brief review of the various classes of marital property ownership existing at the time the agreement was signed and of the cognizable claims one spouse may have against such property may be helpful in understanding the meaning of the phrases "rights arising out of the marriage relationship."

We note that the terms "separate property" and "marital property" in the act bear no relation to the forms of ownership recognized in this state. That is, the term "separate property" is not synonymous with the concept of "individually owned" property; nor is the term "marital property" synonymous with the concept of "jointly owned" property. Our equitable distribution statutes define the terms as follows:

(b) For purposes of this section:

(1) "Marital property" means all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property in accordance with subdivision (2) of this section. Marital property includes all vested pension, retirement, and other deferred compensation rights, including military pensions eligible under the federal Uniformed Services Former Spouses' Protection Act.

(2) "Separate property" means all real and personal property acquired by a spouse before marriage or acquired by a spouse by bequest, devise, descent, or gift during the course of the marriage. However, property acquired by gift from the other spouse during the course of the marriage shall be considered separate property only if such an intention is. stated in the conveyance.

Property acquired in exchange for separate property shall remain separate property regardless of whether the title is in the name of the husband or wife or both and shall not be considered to be marital property unless a contrary intention is expressly stated in the conveyance. The increase in value of separate property and the income derived from separate property shall be considered separate property. All professional licenses and business licenses which would terminate on transfer shall be considered separate property. The expectation of nonvested pension, retirement, or other deferred compensation rights shall be considered separate property.

N.C.G.S. § 50-20(b)(1), (2) (Supp. 1985).

The traditional forms of ownership of property, on the other hand, focus on the person or entity in which the property is titled. Property may be titled in the name of an individual spouse or in the name of both spouses. If the property is titled in the name of both spouses, it is not "owned" by either separately, but by the two of them jointly, either as tenants by the entireties, joint tenants, or tenants in common. *See generally*, P. Hetrick, *Webster's Real Estate Law in North Carolina* § 111 (1981 & Supp. 1985). Upon divorce, the tenancy by the entireties is automatically severed and the spouses become tenants in common, P. Hetrick, *Webster's Real Estate Law in North Carolina* § 127 (1981 & Supp. 1985), each entitled to an undivided one-half interest in the property. *Lanier v. Dawes*, 255 N.C. 458, 121 S.E. 2d 857 (1961).

The act was not intended to disturb these traditional forms of property ownership, the rights flowing from that ownership, or the rights a spouse may otherwise have in the property of the other. Equitable distribution is merely an alternative means of property division; alternative to already existing rights granted by statute or recognized at common law or acquired under a separation agreement. Thus, in the absence of an equitable distribution of entireties property under N.C.G.S. § 50-20, an ex-spouse (now tenant in common) retains the right to possession and the right to alienate and may bring an action for waste, ejectment, accounting, or partition. P. Hetrick, *Webster's Real Estate Law in North Carolina* §§ 112-124 (1981 & Supp. 1985). Moreover,

each spouse retains such other rights as he or she acquired under a valid separation agreement.

With these principles in mind, we turn to the separation agreement that is the subject of this appeal. We note first that the very existence of the agreement evinces an intention by the parties to determine for themselves what their property division should be and what their future relationship is to be, rather than to leave these decisions to a court of law. It is apparent from the scope of the agreement that it was intended as a comprehensive settlement; one dealing with all aspects of the marital estate, including the division of property. The fifteen paragraphs of the document cover alimony, child support, the marital home, the acquisition of property, and the distribution of existing property and obligations. Finally, we must assume that this arrangement was satisfactory to both spouses at the time it was entered into. There has been no showing of, or attempt to show, fraud or duress on the part of either party. Both parties were represented by counsel.

Paragraph 4 is entitled "Release by 'WIFE'." It purports to release "*all* right of future support"; "*all* right of dower, inheritance, descent and distribution"; and "*all* other rights arising out of the marriage relationship in and to any and *all* property now owned by the 'HUSBAND'." (Emphasis added.) While it might conceivably be argued that the words "now owned by the 'HUSBAND' [or 'WIFE,' as the case may be]" somehow implies an attempt to limit the general nature of the release, we conclude from our reading of the entire agreement that the parties intended to completely dispose of the marital estate and effectuate a complete waiver of claims by one party against the other.

An examination of the language used by the parties confirms our conviction in this regard. We consider what the parties meant by "rights arising out of the marriage relationship." As to the wife, the agreement enumerates certain of those rights: support, dower, inheritance, descent, and distribution. The words "and all other rights arising out of the marriage relationship" must refer to some other right not enumerated. Such a right might well be the right to equitable distribution, which is but an equitable claim on marital property available only to previously married persons. Indeed, it is hard to imagine what other equitable or legal claim

could have been contemplated by the parties. Claims on property that do not "arise out of the marriage relationship" are not waived by the language. We conclude that the phrase "rights arising out of the marriage relationship" clearly contemplates a right to equitable distribution.

When the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court.

> " 'The heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.' [*Electric Co. v. Insurance Co.*, 229 N.C. 518, 520, 50 S.E. 2d 295, 297 (1948).] . . . When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning. . . .
>
> " . . . .
>
> " 'Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it. [. . .]' [17 Am. Jur. 2d *Contracts* § 255, at 649 (1964) (footnote omitted).]"

*Bicycle Transit Authority v. Bell*, 314 N.C. 219, 227, 333 S.E. 2d 299, 304 (1985) (quoting *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E. 2d 622, 624-25 (1973) ).

It is a well-settled principle of legal construction that "[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Indemnity Co. v. Hood*, 226 N.C. 706, 710, 40 S.E. 2d 198, 201 (1946) (citations omitted).

We hold that the language of the separation agreement here clearly and unambiguously establishes that the parties' intention was to dispose fully of their respective property rights, both real and personal, arising out of the marriage.

Parties to a marriage who are committed to dissolution of their marriage relationship and who clearly intend to make a final and complete compromise and settlement of their marital affairs, including property rights, by agreement between them and without the intervention of the courts should be able, and indeed encouraged, to do so. The value of such agreements lies in the ability to have them enforced in the courts. The law favors such agreements, and when the court finds such a clear intent expressed in a separation agreement, it will be enforced.

For the reasons stated herein, we hold that the separation agreement entered into by the parties fully disposed of the parties' property rights arising out of the marriage and thus acts as a bar to equitable distribution. Accordingly, there is, as the trial judge so concluded, no genuine issue as to any material fact and plaintiff-husband was entitled to judgment in his favor as a matter of law. N.C.G.S. § 1A-1, Rule 56 (1983). The grant of summary judgment entered by the trial court was proper. The opinion of the Court of Appeals is therefore reversed, and the case is remanded to that court for further remand to the District Court, Rockingham County, for reinstatement of the summary judgment in favor of plaintiff-husband.

Reversed and remanded.

Justice MARTIN dissenting.

I respectfully dissent. This is a case of first impression with this Court. It was decided by the trial court on motion for summary judgment. The movant, Phillip Hagler, had the burden to satisfy the court that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law. *Moore v. Crumpton*, 306 N.C. 618, 295 S.E. 2d 436 (1982). Therefore, plaintiff had the burden to prove that there was no marital property subject to equitable distribution. He has failed to do so. The record is devoid of such evidence. A genuine issue of material fact existed as to whether there was marital property subject to equi-

table distribution. At trial on the *merits,* defendant would have the burden of proof on this issue.

The majority finds that the separation agreement bars defendant's right to equitable distribution. I disagree. The waiver of rights is not favored in the law. A waiver is the intentional and voluntary surrender of a known right or benefit. *Adder v. Holman & Moody, Inc.,* 288 N.C. 484, 219 S.E. 2d 190 (1975). While the equitable distribution act was in effect at the time of execution of the separation agreement and it is presumed that the defendant was aware of it, nowhere in the agreement is there any reference to marital property or to equitable distribution. The separation agreement is by substance and form in the manner of such agreements drafted prior to the adoption of the equitable distribution statute. Thus the agreement fails to support a conclusion that defendant intended to relinquish her right to equitable distribution.

I agree that parties should be encouraged to settle marital differences by mutual agreement. But before a waiver of equitable distribution rights is found from an agreement, the intent of the parties should be clear. Such intent is not manifested here. The majority relies upon paragraphs 3 and 4 of the agreement. In paragraph 4, the wife relinquishes "any and all other rights arising out of the marriage relationship in and to any and all property now owned by the 'HUSBAND' . . . ." Paragraph 3 is the converse, the husband relinquishing all such rights in the wife's property.

The majority states that the phrase "all other rights arising out of the marriage relationship" includes defendant's right to equitable distribution. I find this to be unfounded, as demonstrated below, but even if correct, the paragraph would *only* relinquish defendant's right to equitable distribution in and to property then owned by the husband, *not* to marital property. The majority fails to recognize the modifying phrase "in and to any and all property now owned by the 'HUSBAND,'" which immediately follows the phrase relied upon by the majority. By selectively quoting from the agreement, the majority seeks to alter the legal effect of the agreement.

In stating that "all other rights arising out of the marriage relationship" includes defendant's right to equitable distribution, the majority overlooks N.C.G.S. § 50-20(k):

> The rights of the parties to an equitable distribution of marital property are a species of common ownership, the rights of the respective parties vesting at the time of the filing of the divorce action.

According to this statute, the right to equitable distribution does not arise out of the marital relationship but arises from the filing of the divorce action. It is a right attendant to divorce, not marriage. Sharp, *Equitable Distribution of Property in North Carolina: A Preliminary Analysis*, 61 N.C. L. Rev. 247 (1983). While the marriage relationship exists, there is no right to equitable distribution. This linchpin to the majority's opinion fails.

The right to equitable distribution of marital property is a species of common ownership. N.C.G.S. § 50-20(k) (1984). A new concept of ownership is created by the statute, unknown at common law. The purpose of the statute is to equitably distribute "marital" property, not "separate" property, upon dissolution of the marriage. *Mims v. Mims*, 305 N.C. 41, 286 S.E. 2d 779 (1982). This being a new right, any alleged waiver should be scrutinized carefully. As defendant did not have a right to equitable distribution at the time the separation agreement was entered into, it is unreasonable to assume, as the majority does, that defendant intended to relinquish and waive a right that she did not then have and might not ever have. She signed the separation agreement on 8 July 1983, and the action for divorce was not filed until 21 January 1985. During this eighteen-month period either party could have died, the parties could have reconciled, or the divorce action might never have been filed for various reasons. At the time defendant signed the separation agreement, she could not be positive that she would ever have a right to equitable distribution. Knowledge of the *existence* of the right is essential to the waiver of the right. *Jones v. Insurance Co.*, 254 N.C. 407, 119 S.E. 2d 215 (1961); *Swartzberg v. Insurance Co.*, 252 N.C. 150, 113 S.E. 2d 270 (1960); *Brady v. Benefit Asso.*, 205 N.C. 5, 169 S.E. 823 (1933). There is no evidence in this record to show that defendant thought that she had a right to equitable distribution when she signed the separation agreement, or that she intended to waive her right to equitable distribution at that time, or that the right to equitable distribution existed for her benefit at that time. The language of the separation agreement does not support the majority's conclusion that it encompasses a complete settlement of

the parties' marital rights, as well as defendant's right to equitable distribution.

This is not to say that a party may not waive her right to equitable distribution by the execution of a valid separation agreement. But in order to do so, the clear intention of the party to waive a future right must be manifest. This could be done, for example, by a statement: "I hereby waive and relinquish all rights that I now have, or which may hereafter become vested in me, to equitable distribution pursuant to N.C.G.S. §§ 50-20 and -21." There being no such clear manifestation of intent in this case, I vote to affirm the decision of the Court of Appeals.

I am authorized to state that Justice MITCHELL joins in this dissenting opinion.