IN THE SUPREME COURT OF NORTH CAROLINA

No. 398PA21

Filed 28 April 2023

DUKE ENERGY CAROLINAS, LLC

v.

MICHAEL L. KISER, ROBIN S. KISER, and SUNSET KEYS, LLC

v.

THOMAS E. SCHMITT and KAREN A. SCHMITT, et al.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 280 N.C. App. 1 (2021), reversing an order and judgment entered on 2 January 2020 by Judge Nathaniel J. Poovey in Superior Court, Catawba County and remanding for further proceedings. Heard in the Supreme Court on 7 February 2023.

> *Kiran H. Mehta, Christopher G. Browning Jr., and Victoria A. Alvarez for plaintiff-appellant.*
>
> *TLG Law f/k/a Redding Jones, PLLC, by Ty Kimmell McTier and David G. Redding, for defendant-appellees.*
>
> *David P. Parker for third-party defendant-appellants Thomas E. Schmitt, Karen A. Schmitt, Linda Gail Combs, and [the Estate of] Robert Donald Shepard.*
>
> *Mark L. Childers and Kevin C. Donaldson for other third-party defendant-appellants.*
>
> *No brief for third-party defendant-appellants Donald Reid Hankins, William Claypoole, Val Rhae Claypoole, Theodore H. Corriher, and Tommy L. Wallace.*

NEWBY, Chief Justice.

This case requires us to determine Duke Energy Carolinas, LLC's[1] scope of authority under an easement it acquired in order to create Lake Norman. Specifically, we consider, once the lake is created, whether this easement grants Duke the right to allow third-party homeowners to build structures over and into the submerged easement property and to use the lake for recreational purposes. To answer this question, we first look to the language of the easement. The plain language of the easement grants Duke "absolute water rights" to "treat [the land] in any manner [it] deem[s] necessary or desirable." Because the easement's plain language is clear and unambiguous and Duke's actions are encompassed within the broad grant of authority, Duke properly allowed third-party homeowners to build structures over and into the submerged property and use the lake in a recreational manner. This expansive scope of authority evidenced by the easement's plain language is consistent with Duke's federal licensing obligations over Lake Norman and has been confirmed by the parties in practice. As such, we reverse the decision of the Court of Appeals.

On 4 August 1961, Duke purchased an easement from B. L. and Zula C. Kiser (the Kiser Grandparents) covering a 280.4-acre tract as part of what is now known as Lake Norman. At the time of the conveyance, much of the bed of Lake Norman was dry. Duke acquired the easement, as well as an interest in the surrounding lakebed

---

[1] Duke Energy Carolinas, LLC is a subsidiary of Duke Energy Corporation (formerly Duke Power Company) and is herein referred to as "Duke."

property, in order to create the lake by constructing a dam pursuant to a federal license. Since 1958, Duke has maintained a license issued by the Federal Energy Regulatory Commission (FERC) to operate a long-term hydroelectric project involving Lake Norman and several surrounding lakes and dams and "to supervise and control the uses and occupancies [of Lake Norman] for which it grants permission."[2]

Accordingly, the Kiser Grandparents granted Duke, its successors, and assigns by deed an easement to create a lake with two distinct component parts: a component covering the anticipated lake level and a component covering the area subject to higher water. The first component part of the conveyance includes

> a permanent easement of water flowage, absolute water rights, and easement to back, to pond, to raise, to flood and to divert the waters of the Catawba River and its tributaries in, over, upon, through and away from the 280.4 acres, more or less, of land hereinafter described, together with the right to clear, and keep clear from said 280.4 acres, all timber, underbrush, vegetation, buildings and other structures or objects, and to grade and to treat said 280.4 acres, more or less, in any manner deemed necessary or desirable by Duke Power Company.

The first component (the Flowage Easement) references the 280.4 acres of land which would become submerged property resting below an elevation of 760 feet as part of the planned lake level. To cover the area subject to higher water, the Kiser

---

[2] FERC initially granted Duke a license for a 50-year term in 1958. Thereafter, the license was renewed annually for seven years. In 2015, FERC relicensed Duke for a 40-year term.

Grandparents granted Duke, its successors, and assigns:

> a permanent flood easement, and the right, privilege and easement of backing, ponding, raising, flooding, or diverting the waters of the Catawba River and its tributaries, in, over, upon, through, or away from the land hereinafter described up to an elevation of 770 feet above mean sea level, U.S.G.S. datum, whenever and to whatever extent deemed necessary or desirable by the Power Company in connection with, as a part of, or incident to the construction, operation, maintenance, repair, altering, or replacing of a dam and hydroelectric power plant to be constructed at or near Cowan's Ford on the Catawba River . . . and otherwise use and treat said land up to said 770 feet elevation in any manner deemed necessary or desirable by the Power Company in connection with the construction, reconstruction, maintenance and operation of the dam and power plant above referred . . . and of the reservoir or lake created or to be created by same.[3]

The second component of the easement described in the deed (the Flood Easement) references the land that would rest "up to . . . 770 feet above mean sea level" and thus would remain dry land, but subject to flooding, after the creation of Lake Norman.[4]

About two years later Duke flooded the land at issue. Upon the impoundment of Lake Norman, the Kiser Grandparents retained an area of land that became an island (Kiser Island) surrounded by the 280.4-acre submerged parcel subject to Duke's easement. Between 1964 and 2015, the Kiser Grandparents subdivided Kiser Island into residential waterfront lots and sold the lots to numerous third-party

---

[3] The language of the easement reflects a filed copy that immaterially differs from the original.

[4] The Flowage and Flood Easements are referred to collectively as "the easement."

buyers (the third-party homeowners). The Kiser Grandparents retained at least one lot (the Kiser lot).

After the creation of Lake Norman and Kiser Island, Duke implemented the Shoreline Management Guidelines (the SMG) in accordance with its FERC license. The SMG are a "detailed set of procedures and criteria" that "regulate activities within [Lake Norman] pursuant to [Duke's] FERC obligation[ ]" to manage Lake Norman's shoreline, uses, and occupancies. Specifically, the SMG "regulate the construction and maintenance of lake access facilities" and similar dock structures through "permits or other agreements" that Duke issues. Thus, pursuant to the SMG and with Duke's permission, the third-party homeowners began building docks, piers, and other shoreline structures as early as 1964 that extend from their waterfront lots over and into the waters of Lake Norman. The Kiser family has also sought and received permission from Duke to build certain shoreline structures.[5] Accordingly, many of the structures built by the Kisers and the third-party homeowners touch or are anchored to the Kisers' submerged property subject to Duke's easement.

During a drought in 2015, the lake level receded. Michael L. Kiser, a grandson of the Kiser Grandparents, built a seventeen-and-a-half-foot retaining wall extending from the Kiser lot into the once submerged property. Mr. Kiser then backfilled the

---

[5] At oral argument, when asked whether the Kisers have requested a permit from Duke to build a dock or similar structure in the past, counsel for the Kisers responded in the affirmative, stating that Duke has "the authority to grant permission to build" such structures. *See* Oral Argument at 29:58, Duke Energy Carolinas, LLC v. Kiser (No. 398PA21) (Feb. 7, 2023), https://www.youtube.com/watch?v=yh0mHp58byg (last visited Mar. 16, 2023).

area behind the wall with dry materials to extend the shoreline and increase the size of the Kiser lot. As a result, the new construction encompassed nearly 2,449 square feet of land covered by Duke's easement which had previously been submerged. Mr. Kiser, however, did not apply for a permit or receive permission from Duke prior to building the retaining wall. In response to Mr. Kiser's actions, Duke issued a Stop-Work Directive, and the North Carolina Department of Environmental Quality (NCDEQ) notified Mr. Kiser that the unauthorized construction would affect the waters of Lake Norman. Despite multiple requests by both Duke and NCDEQ, Mr. Kiser did not remove the retaining wall or any of the fill material from the lakebed within the easement boundary.

On 27 January 2017, Duke filed suit against Mr. Kiser and his wife, Robin S. Kiser, together with their entity Sunset Keys, LLC[6] (the Kisers), alleging trespass and wrongful interference with the easement by building the retaining wall and backfilling the lakebed area subject to Duke's easement. Duke sought injunctive relief requiring the Kisers "to remove the retaining wall and fill material from the lake bed" and restore "the disturbed shoreline area." On 13 February 2017, the Kisers responded and asserted counterclaims against Duke. The Kisers challenged Duke's authority under the easement to demand removal of the retaining wall, to issue dock permits to third-party homeowners, and to allow recreational use of the waters. In

---

[6] Upon the death of Michael Kiser's father in March of 2016, Michael Kiser and his two brothers became the owners of the land at issue. They subsequently conveyed the land to Sunset Keys, LLC, of which Michael Kiser and his two brothers are the members.

addition, the Kisers brought trespass claims against the third-party homeowners for building structures on the Kisers' submerged property without their consent, joining the homeowners[7] as third-party defendants.

On 3 August 2018, Duke moved for partial summary judgment regarding its claims for wrongful interference and injunctive relief against the Kisers. The trial court held a hearing on 13 August 2018, heard oral argument from both parties, and considered the pleadings, affidavits, and briefs submitted to the court. On 27 August 2018, the trial court entered an order and judgment granting Duke's motion for partial summary judgment. The trial court found that Duke's rights under the easement entitled it to have the retaining wall cleared from the submerged property. Accordingly, the trial court ordered the Kisers to remove the retaining wall and clear the backfilled area from the lakebed.

On 25 October 2019, Duke moved for summary judgment on its remaining trespass claim and the Kisers' counterclaims. On 28 October 2019, the third-party homeowners moved for summary judgment on the Kisers' third-party trespass claims. After conducting a hearing in which the trial court heard oral argument and considered materials submitted by the parties, the trial court entered an order and judgment on 2 January 2020 granting summary judgment in favor of Duke and the third-party homeowners. The trial court recognized Duke's broad authority under the

---

[7] Several of the third-party homeowners to this appeal are represented by counsel while others are proceeding unrepresented.

easement and determined that Duke "acted within the scope of [its] authority" by granting permits for docks and other structures on the submerged property and by allowing recreational use of the water above the submerged property. Furthermore, the trial court quieted title in the waterfront lots, structures, and waters to the third-party homeowners, finding that the Kisers' claims constituted a cloud upon the third-party homeowners' titles to their properties. The Kisers appealed.[8]

On appeal, the Kisers argued that Duke acted outside the scope of its authority under the easement by allowing third parties to use the 280.4 acres of Lake Norman without the Kisers' consent and that the trial court erred by quieting title in the waterfront structures to the third-party homeowners. *Duke Energy Carolinas, LLC v. Kiser*, 280 N.C. App. 1, 6, 867 S.E.2d 1, 7–8 (2021). The Court of Appeals reversed the trial court's 2 January 2020 order granting summary judgment to Duke and the third-party homeowners. *Id.* at 16, 867 S.E.2d at 14. First, the Court of Appeals recognized that the plain language of the Flowage Easement is unambiguous and broad enough to "virtually convey a fee simple interest" to Duke. *Id.* at 9, 867 S.E.2d at 9. The Court of Appeals, however, "decline[d] to read [the Flowage Easement] in such a way," deferring instead to its subjective view of the Kiser Grandparents'

---

[8] The Kisers filed and served a notice of appeal for both of the trial court's orders but certified only the 2 January 2020 order for review. Thus, the Court of Appeals limited its review to the 2 January 2020 order. Accordingly, we likewise limit our review to the 2 January 2020 order. The trial court's 27 August 2018 order remains undisturbed.

purported intent in retaining the fee title to the submerged property.[9] *Id.* at 9–10, 867 S.E.2d at 9–10.

Next, upon noting Duke's broad interest in the submerged property, the Court of Appeals considered whether an easement granting "virtually unlimited authority to 'treat' property 'in any manner' includes the power for the easement holder to permit strangers to the agreement to use the land for their own benefit." *Id.* at 10, 867 S.E.2d at 10. The Court of Appeals adopted a bright-line principle that

> unless an easement explicitly states otherwise, an easement holder may not permit strangers to the easement agreement to make use of the land, other than for the use and benefit of the easement holder, without the consent of the landowner where such use would constitute additional burdens upon the servient tenement.

*Id.*; *see Lovin v. Crisp*, 36 N.C. App. 185, 189, 243 S.E.2d 406, 409 (1978) (holding that under the terms of the easement at issue, because the easement holder's surrounding property was not mentioned in the easement, the nearby land could not benefit from the easement holder's interest). Therefore, according to the Court of Appeals, because the third-party homeowners here are not mentioned in the easement and did not have a property interest in the land when the easement was created, "Duke exceeded its scope of authority by permitting the [third-party homeowners] to construct and

---

[9] There are multiple reasons why the Kiser Grandparents may have conveyed an easement to Duke rather than title to the parcel in fee simple. It was error for the Court of Appeals to project its own subjective beliefs in attempting to discern the original parties' purported intent for granting the easement. When the language of an easement is clear and unambiguous, the court is to infer the intention of the parties from the words of the easement itself. *See State v. Philip Morris USA Inc.*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005).

maintain structures over and into the Kisers' submerged land without the Kisers' consent." *Kiser*, 280 N.C. App. at 11, 867 S.E.2d at 10.

Duke filed a petition for discretionary review with this Court on 22 November 2021. On 2 December 2021, the third-party homeowners also filed a petition for discretionary review. This Court allowed the parties' petitions on 9 February 2022.

This Court reviews an appeal of a summary judgment order de novo. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A–1, Rule 56(c) (2021). The moving party is entitled to summary judgment "when only a question of law arises based on undisputed facts." *Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 334, 777 S.E.2d 272, 278 (2015). "All facts asserted by the [nonmoving] party are taken as true and . . . viewed in the light most favorable to that party." *Id.* (alterations in original) (quoting *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)).

In applying these well-established principles for summary judgment here, we consider whether an easement granted to establish a lake, which provides for "absolute water rights" to "treat" the servient estate "in any manner deemed necessary or desirable," allows the easement holder to permit third parties to use the land when the easement holder so deems it necessary or desirable. "An easement is an interest in land . . . generally created by deed." *Borders v. Yarbrough*, 237 N.C. 540, 542, 75 S.E.2d 541, 542 (1953). "An easement deed . . . is, of course, a contract."

*Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962). As such, the ordinary rules of contract construction apply to construing an easement. *Id.*

Like contracts, interpreting an easement "requires the court to examine the language of the [easement] itself for indications of the parties' intent at the moment of execution." *State v. Philip Morris USA Inc.*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005) (citing *Lane v. Scarborough*, 284 N.C. 407, 409–10, 200 S.E.2d 622, 624 (1973)). In doing so, "[i]t must be presumed the parties intended what the language used clearly expresses, and the [easement] must be construed to mean what on its face it purports to mean." *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946) (citation omitted). Accordingly, "[i]f the plain language of [the easement] is clear, the intention of the parties is inferred from the words of the [easement]," *Philip Morris USA Inc.*, 359 N.C. at 773, 618 S.E.2d at 225 (quoting *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996)), and the "construction of the [easement] is a matter of law for the court," *Hagler v. Hagler*, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (1987).

In addressing whether Duke has authority under the easement to allow the third-party homeowners to build shoreline structures over and into the submerged property and use the waters of Lake Norman, we first look to the plain language of the easement. In looking to the plain language, we do bear in mind that the original parties created the easement in order for Duke to form a lake. Here the Flowage

Easement expressly provides that the Kiser Grandparents permanently granted Duke "absolute water rights" to "treat said 280.4 acres . . . in any manner [Duke] deem[s] necessary or desirable." The language of the Flowage Easement is clear, unambiguous, and broad in scope, plainly allowing Duke to treat the submerged property however Duke deems "necessary or desirable." Significantly, the easement's text does not limit how Duke may treat the submerged property, confine Duke's exercise of discretion, set conditions that Duke must satisfy before using the submerged property in a particular manner, or prohibit Duke from allowing third-party uses of the property without the Kisers' consent.

The Kisers, on the other hand, contend that because the easement is silent with respect to the third-party homeowners, the third parties have no right to use the waters recreationally, build shoreline structures into the submerged easement property, or otherwise benefit from the easement without the Kisers' consent. The Kisers, however, overlook Duke's expansive scope of authority evidenced by the Flowage Easement's broad, unambiguous language. Such an expansive reading is consistent with the original parties' understanding that the purpose of the easement was for Duke to create and maintain a lake. Accordingly, Duke may properly exercise its expansive rights under the Flowage Easement to benefit the third-party homeowners when it is necessary or desirable to Duke. Therefore, Duke acted within the scope of its authority under the Flowage Easement by allowing the third-party

homeowners to build docks, piers, and other structures into the submerged property and to use the waters of Lake Norman for recreation.

The Court of Appeals, despite initially recognizing the Flowage Easement's unambiguous language and Duke's broad authority under the easement, deferred instead to the original parties' purported intent in construing the easement. *Kiser*, 280 N.C. App. at 9–10, 867 S.E.2d at 9–10. As a result, the Court of Appeals adopted a bright-line rule from *Lovin*—that easement rights may only benefit the easement holder unless third parties are also expressly named in the easement—which contradicts the Flowage Easement's plain language. *Id.* at 10, 867 S.E.2d at 10. *Lovin*, however, is readily distinguishable from the facts here, is not binding on this Court, and establishes a principle that narrows the Flowage Easement's broad and unambiguous language.

In *Lovin*, a landowner conveyed an easement by deed to his neighbor. *Lovin*, 36 N.C. App. at 188, 243 S.E.2d at 409. The language of the easement permitted the easement holder "to install and maintain a water line" on a specific tract of land. *Id.* Because the easement's language was narrowly confined to benefit one parcel of land and the surrounding property was not described in the easement, the court held that the easement holder could not install additional water lines to benefit neighboring lands. *Id.* at 189–90, 243 S.E.2d at 409–10. Here, however, unlike the limited easement in *Lovin* confining the use of the easement to a specific tract of land for a narrow purpose, the language of the Flowage Easement is broad and does not

constrain how Duke may treat the easement property. There is a vast difference between intending to create and maintain a lake versus allowing a water line to cross a property. As such, under the Flowage Easement's broad language, Duke may permit third parties to use the easement property when such use is necessary or desirable to Duke. Therefore, because the easement in *Lovin* and the Flowage Easement here serve different purposes and contain material differences, the Court of Appeals erred by relying on *Lovin* and applying a novel principle that contradicts and narrows the Flowage Easement's clear language.

The Flowage Easement's unambiguous language granting Duke broad authority over the submerged property is consistent with the purpose of Duke's federal licensing obligations over Lake Norman and has been confirmed by the parties in practice. When Duke obtained the FERC license in 1958, it likewise needed broad authority over the land at issue in order to flood the entire parcel and comply with its requirements under the license for developing and operating Lake Norman. As such, the Kiser Grandparents conveyed to Duke "permanent" and "absolute water rights" over the Kisers' parcel, which provided Duke with substantial discretion to manage the submerged parcel. Duke therefore created a permit plan for homeowners seeking to build lake access facilities in accordance with Duke's obligation to oversee Lake Norman's shoreline, uses, and occupancies. Duke's permit plan is encompassed within Duke's broad grant of authority under the Flowage Easement's plain language and likewise supports the purposes of Duke's FERC license. Ultimately, Duke's broad

grant of authority under the Flowage Easement allows Duke to comply with its FERC license requirements.

Additionally, the parties' practices over the past sixty years have consistently confirmed that Duke has authority under the Flowage Easement to allow the third-party homeowners to build shoreline structures into the submerged property. Since the Kisers began subdividing and selling the waterfront lots on Kiser Island, the third-party homeowners have complied with Duke's permit plan and have received authorization from Duke, rather than the Kisers, to build docks, piers, and other shoreline structures on their lots and into the submerged easement property. Notably, the Kiser family has also sought and received permission from Duke to build shoreline structures extending from the Kiser lot and into the submerged property because Duke has "the authority to grant permission to build" such structures. *See* Oral Argument at 29:58, Duke Energy Carolinas, LLC v. Kiser (No. 398PA21) (Feb. 7, 2023), https://www.youtube.com/watch?v=yh0mHp58byg (last visited Mar. 16, 2023). Thus, not only have the third-party homeowners sought permission from Duke, rather than the Kisers, to build into the submerged land, but the Kisers have also requested and received similar authorization from Duke. As such, both the named and unnamed parties to the easement have repeatedly acted in a manner consistent with Duke's having authority under the Flowage Easement to permit homeowners to build structures from their waterfront lots over and into the submerged property.

In summary, the plain language of the easement is unambiguous and grants Duke broad authority to treat the submerged easement property in any manner Duke deems necessary or desirable. Therefore, Duke acted within the scope of its broad authority under the easement by allowing the third-party homeowners to build docks, piers, and other structures over and into the submerged land without the Kisers' consent. The easement's plain language is consistent with Duke's federal licensing obligations and has been confirmed by the parties in practice. Accordingly, the decision of the Court of Appeals is reversed.

REVERSED.